## COURT OF APPEALS,

### April 30, 1912.

## THE PEOPLE v. FRANK C. MARRIN.

### (205 N. Y. 275.)

(1.) FORGERY—EVIDENCE—SIMILAR ACTS BY DEFENDANT ABOUT THE SAME TIME.

Where knowledge is a necessary ingredient of a crime, evidence of similar acts by the defendant at or about the same time is admissible. Such evidence has been sanctioned in cases involving the uttering of forged instruments, counterfeiting, obtaining money by false pretenses, receiving stolen property, setting buildings on fire with intent to defraud insurance companies, sexual crimes, violation of the Excise Law, gambling and other offenses.

(2.) SAME—FALSE CERTIFICATE OF ACKNOWLEDGMENT OF MORTGAGE.

On the trial of defendant on an indictment under section 510 of the Penal Code (Penal Law, § 885), charging that as a commissioner of deeds he "willfully certified falsely" that a certain mortgage was duly acknowledged before him by a person purporting to be the mortgagor, it appeared among other things that no person of the name of the alleged mortgagor had ever been connected with the title to the mortgaged premises; that there was a false certificate of record indorsed on the mortgage; that it purported to cover adjoining halves of two city lots and that defendant embezzled the moneys purporting to be secured by the mortgage, but from time to time paid the mortgagee the interest thereon; the People, solely for the purpose of showing that no person of that name had acknowledged the instrument, and that if any person had, the defendant knew it was not the person described therein and that the transaction was part of a continuous scheme to defraud the mortgagee, offered eight similar mortgages to the same mortgagee acknowledged by the defendant purporting to be made by different mortgagors, which were received in evidence. *Held*, no error; that in order to show knowledge, intention and the absence of mistake, the district attorney had the right to prove similar acts, done under similar circumstances at about the same time, with intent to defraud the same person by the same means. The common method, purpose and victim formed the connecting links which strung together the nine successive and successful efforts to defraud pursuant to a common scheme.

People v. Marrin, 147 App. Div. 903, affirmed.

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 10, 1911, affirming a judgment of the Kings County Court rendered upon a verdict convicting the defendant of the crime of forgery in the first degree.

On the 3d day of May, 1895, the defendant was indicted for the crime of forgery in the first degree, in that on the 9th of November, 1893, in his capacity as commissioner of deeds, he willfully, falsely and feloniously certified that a mortgage " purporting to have been made and executed by one James Cahill to one Caroline Barry in the sum of $4,000 * * * was acknowledged by a party thereto, to wit, the said James Cahill, * * * whereas in truth and in fact * * * such certifying by him, the said Frank C. Marrin, as such commissioner of deeds, was in all respects false, fraudulent and spurious, as he, the said Frank C. Marrin, then and there well knew."

The statute on the subject is as follows: "An officer authorized to take the proof or acknowledgment of an instrument which by law may be recorded, who *willfully certifies falsely* that the execution of such an instrument was acknowledged by any party thereto, or that the execution of any such instrument was proved, is guilty of forgery in the first degree." (Penal Code, § 510; Penal Law, § 885.)

Shortly before the indictment was found the defendant fled to a country with which the United States had no extradition treaty and was absent for more than thirteen years. He was finally arrested, and when arraigned on the 3d of October, 1908, he stood mute, whereupon the court directed that the plea of " not guilty " be entered in his behalf. At the trial he appeared by counsel, made many objections to evidence, cross-examined the witnesses for the people and presented numerous requests to charge, but called no witness and was not sworn himself. The jury found him guilty as charged in the indictment and the

judgment entered on the verdict was unanimously affirmed on appeal to the Appellate Division.

*William Travers Jerome,* for appellant. The admission, against the objection of the defendant and subject to his exception, of evidence tending to show the commission by the defendant of crimes other than the one charged in the indictment was highly prejudicial to the defendant, and constitutes reversible error. (People v. Winner, 80 Hun, 130; Barber v. People, 17 Hun, 366; People v. Miller, 2 Park. Cr. 197; People v. Haynes, 11 Wend. 557; People v. Gates, 13 Wend. 311; People v. Molineux, 168 N. Y. 264.)

*James C. Cropsey,* district attorney (*Hersey Egginton* and *John M. Perry,* of counsel), for respondent. The evidence of eight other fictitious bonds and mortgages, in each of which Caroline Barry was the sole mortgagee, and of the checks to show that her money was stolen by means of these fictitious transactions, was competent and admissible to show the defendant's evil or criminal intent, his guilty knowledge, his one common and connected scheme or plan, and the absence of mistake or accident on his part. (People v. Powell, 63 N. Y. 88; People v. Wiman, 148 N. Y. 29; People v. Stevens, 109 N. Y. 159; Marden v. Dorthy, 160 N. Y. 41; Pepole v. Plath, 100 N. Y. 590; Mayer v. People, 30 N. Y. 364; People v. Shulman, 80 N. Y. 373; People v. Everhardt, 104 N. Y. 591; People v. Haver, 4 N. Y. Crim. 171; People v. De Graff, 5 N. Y. Crim. 561; Weyman v. People, 4 Hun, 511; 62 N. Y. 623.)

VANN, J.:

Upon the charge that the defendant, as a commissioner of deeds, "wilfully certified falsely" that the mortgage in question was duly acknowledged before him, a serious difference of opinion has arisen in regard to the admission of certain evidence

given in support of the accusation. The circumstances under which that evidence was received were as follows: The defendant, a practicing lawyer in the city of Brooklyn, had as a client an old lady named Caroline Barry, a resident of that city, who on or about the third of November, 1893, gave him $4,000 to invest for her. In a short time he delivered to her the paper set forth in the indictment purporting to be a mortgage duly acknowledged before himself as commissioner of deeds and to have been executed by James Cahill, as mortgagor, to Caroline Barry, as mortgagee, to secure the payment of $4,000 in three years from date with interest payable semi-annually. There was a false certificate of record indorsed on the mortgage, which purported to cover the adjoining halves of two lots in Brooklyn, the division lines passing nearly through the center of the buildings thereon. It was shown that no person named James Cahill had ever been connected with the record, title or possession of either piece of property. Several persons of that name were called by the prosecution, each of whom swore that he was not the James Cahill named in the instrument, that the signature thereto was not that of any James Cahill known to him and that he neither signed nor acknowledged it himself. The defendant embezzled said money, but from time to time paid Mrs. Barry what purported to be the interest upon the mortgage as it fell due.

Thereupon, in order to show that James Cahill was a myth, that if any one acknowledged the instrument the defendant knew it was not the person described therein and that the transaction was part of a continuous scheme to defraud Mrs. Barry, eight similar mortgages were offered and received for that purpose only. At the time they were received, as well as in the charge, the court carefully instructed the jury to that effect and distinctly told them that such mortgages could not be considered as any evidence of an independent crime or for any purpose except the one thus announced.

These mortgages purported to have been given within a period of less than two years, being dated two or three months apart, and they were all actually recorded, except the last two, which were dated after the one in question and bore false certificates of record. Each was delivered by the defendant to Caroline Barry as evidence of an investment made by him for her of money intrusted by her to him, to be invested in mortgages in her name, shortly before the date of each instrument, but in each case the money instead of being invested in any way was converted by him to his own use. Each ran to her as mortgagee and each covered no unit of realty, but parts of houses on adjacent lots belonging to different owners, or rear ends or sides of lots. In each instance the person named as mortgagor was unknown and could not be found after diligent inquiry. Each was a stranger to the record, title and possession of the premises covered by the mortgage. Each mortgage was certified by the defendant to have been acknowledged before him as commissioner of deeds, and he paid the interest on each as it became due from money intrusted to him by Mrs. Barry for investment. He used all the money, amounting to over $30,000, for his own purposes.

It was not enough for the people to show simply that the certificate in question as made by the defendant was false. It was necessary for them to go further and show that he knew it was false, as the statute condemns one who " willfully certifies falsely." Willfully, as thus used, means intentionally, so that proof of intention to make a false certificate is expressly required. As the defendant had made no admission upon the subject, knowledge and intention could be shown only by circumstantial evidence. Moreover, although the district attorney had made out a *prima facie* case, he was not bound to stop there, but could go on and make the case conclusive by showing that the defendant was not mistaken and that he was not deceived by someone who assumed to be James Cahill, and to acknowl-

edge the mortgage under that name. It could not be known in advance what the defendant might swear to himself, or prove by other witnesses. *Non constat* he might produce evidence tending to show that he was misled into making the certificate by a person whom he honestly believed to be James Cahill, as named in the mortgage. In order to show knowledge, intention and the absence of mistake, the district attorney had the right to prove similar acts, done under similar circumstances at about he same time, with intent to defraud the same person by the same means. The common method, purpose and victim formed the connecting links which strung together the nine successive and successful efforts to defraud pursuant to a common scheme. (People v. Dolan, 186 N. Y. 4, 10.) The mortgagor named in the indictment may or may not have been a myth, but when eight similar myths appeared as mortgagors in eight similar mortgages, some dated before and some after the one in question but no two far apart, each given to and used to defraud the same person and each acknowledged before the defendant who received the proceeds of the fraud in each case, the probability that the mortgagor in question was a myth was greatly strengthened. The probative force of such evidence bore logically on the question whether the defendant knew that James Cahill was a myth and with cumulative power in proportion to the number of instances, tended to exclude the possibility of mistake on his part in that regard. It also tended to show his intention to make a false certificate.

The suggestion that evidence could not be received to show that the same man picked the pocket of the same person on several successive occasions near together, does not apply to this case, because the pickpocket knows when he steals. There can be no mistake about it, whereas here there may have been a mistake. James Cahill may not have been a myth. Some one may have assumed to be James Cahill and may have convinced the defendant that he bore that name and was in fact the mort-

.gagor, so that while the certificate was false the defendant may not have known it was false. The people did not know how much evidence might be presented by him tending to show that .he was mistaken and the way was open to the prosecution to reduce the possibility of mistake to a minimum by proving eight similar and connected transactions, each of which as well as .the one in question was part of a general scheme to defraud Mrs. Barry by means of spurious mortgages certified by the defendant in the same way and under similar circumstances. The evidence also bore upon intent, not merely the intention of the defendant to make the certificate, but with especial weight upon his intention to commit a crime in making it. If one plan ran through all the transactions and was-worked out in the same way, at nearly the same time, by the same means, with intent to defraud the same person, with the same effort to conceal by payment of interest, and a common method, agency and purpose welded all the mortgages together, all were competent to show that the defendant was not mistaken in doing the single .act for which he was tried, because nine mistakes of the same .kind, each of which put a large sum of money in his pocket, .are impossible of belief.

It is conceded that where knowledge is a necessary ingredient of a crime, evidence of similar acts by the defendant at or about the same time is admissible. It is further conceded that proof of *scienter* was necessary in order to show that the defendant knew that any person who may have appeared before him was not the James Cahill described in the mortgage. And, finally, it is conceded that if the eight mortgages had all purported to have been executed by James Cahill they would have been competent to show knowledge and improbability of deception or mistake.

It seems to me that the distinction between the case and the concession is too narrow for practical use in administering the law. If all the mortgagors in the eight mortgages were myths,

the mythical names they bore were of slight importance. The false name was not the material fact, but the false man and the furtive intent in certifying that he was a true man and the mortgagor. If the eight mortgagors were myths, it was probable that the ninth was also and equally probable that the defendant knew it, whether they bore the same name or different names. The theory of the prosecution was not that because the defendant forged on eight occasions he forged on the ninth, but that on the ninth he was not mistaken, deceived or misled; that he knew what he was doing and did it with evil intent, because shortly before and shortly after he did the same thing to the same person under like circumstances for the same purpose. The fact that the evidence tended to show him guilty of other crimes does not control, provided it fairly tended to prove that he knowingly and intentionally certified falsely. As he may have acted without wrongful intention on the ninth occasion, it was proper to show, as bearing on his good faith, how he acted on eight similar occasions, closely connected with the ninth. If he had been tried for uttering forged paper on one occasion, clearly it would have been competent to show that he uttered like paper on eight similar occasions, because it would have borne on his knowledge, intent and good faith on the occasion in question.

Such evidence has been sanctioned for time out of mind in cases involving the uttering of forged instruments, counterfeiting, obtaining money by false pretenses, receiving stolen property, setting buildings on fire with intent to defraud insurance companies, sexual crimes, violation of the exercise law, gambling and other offenses. (Mayer v. People, 80 N. Y. 364; People v. Shulman, 80 N. Y. 373, note; People v. Everhardt, 104 N. Y. 591, 595; People v. Molineux, 168 N. Y. 264; People v. Dolan, 186 N. Y. 4; People v. Zucker, 20 App. Div. 363; 154 N. Y. 770; People v. Harris, 136 N. Y. 423; People v. Doty, 175 N. Y. 164; Rex v. Dossett, 2 C. & K. 307; Rex v.

Cooper, 3 Cox Cr. 547; State v. Lapage, 57 N. H. 245; United States v. Snyder, 14 Fed. Rep. 554.)

In People v. Everhardt, upon the trial of the defendant for uttering a forged check knowing it to be forged, the people were allowed to prove, against his objection, the uttering of other forged checks by him on other occasions. Judge Earl, speaking for all the judges, said: "In this there was no error. The defendant by his plea of not guilty had put in issue everything which it was incumbent upon the people to prove. They had no direct or positive evidence that he personally forged the check which he uttered, and it was open for him to show that at the time he uttered it he had no knowledge that it was forged, and was therefore innocent of crime; and for the purpose of showing the prisoner's guilty knowledge in such cases it has always been held competent to prove other forgeries. Such proof is not received for the purpose of showing other crimes than that charged in the indictment, but for the purpose of showing the guilty knowledge and intent which are elements of the crime charged, and it can be considered by the jury only for that purpose. Although the evidence of Gaylord, corroborated as it was, as to the guilty knowledge of the defendant, was quite clear and convincing, yet the people were not bound to rest upon a *prima facie* case, but had the right to confirm that evidence by the proof as to the uttering of other forged checks."

In People v. Shulman the indictment was under the statute relating to false pretenses. Judge Earl said: "The intent, motive, and knowledge of the prisoner are proper subjects of investigation, and they may be found by evidence of all the circumstances attending the criminal transaction, or by the declarations and conduct of the prisoner, both before and after. * * * In the trial of a person charged with passing counterfeit money, proof is always received to show that the prisoner on other occasions, both before and after the time named in the indictment, passed other counterfeit bills. On the trial of a

person charged with receiving stolen goods, it may be shown
that before and after the time of the alleged crime he received
other stolen goods from the same party; and the same kind of
evidence has been received upon trials for embezzlement.
\* \* \* So when a person is charged with procuring property
by false pretenses, and the question is as to his knowledge, mo-
tive, or intent, evidence that soon after, and from time to time
afterwards, he continued to obtain property from others in the
same way and for the same fraudulent purpose obviously reflects
light upon that question. Such evidence has a direct tendency
to show the mind with which he obtained the goods at the prior
date. \* \* \* But there is one general rule which must ap-
ply to all such cases; there must be, in the transactions thus
sought to be proved, some relation to or connection with the
main transaction. That is, they must show a common motive
or intent running through all the transactions, or they must be
such as in their nature to show guilty knowledge at the time of
the main transaction, and if they possess these characteristics,
then it matters not whether they were before or after, or near
to or remote from the main transaction."

In People v. Dolan the defendant was indicted for forging
the name of Thomas Cockerill & Son, as the makers of a prom-
issory note and uttering the same, knowing it to be forged. In
order to show guilty knowledge on the part of the defendant
the prosecution proved the uttering by him of two other forged
notes signed with the same name, two more signed with the
name of James Stewart & Co., and a fifth with the name of
Patrick Gallagher. The defendant had had dealings with each
of the purported makers, and when he uttered the forgeries he
was in financial difficulties, but no other connection between the
five notes and the note in question appeared. It was held that
all the notes were competent. The court quoted from People
v. Sharp (107 N. Y. 467), where it was said: " A man might
think the money he passed was good, and he might be mistaken

once or even twice; but the presumption of mistake lessens with every repetition of the act of passing money really counterfeit." Judge Werner then added: " The latter observation very tersely states a rule that is as applicable to prosecution for forgery as to cases of passing counterfeit money." After holding that the evidence was competent upon the issue of guilty knowledge it was further said: " There is also another ground upon which this evidence was competent. All the notes referred to in the evidence were made at about the same time. In each case they were made payable to the defendant and indorsed by him. During the period covered by all the notes the defendant was endeavoring to raise sufficient funds to meet his obligations, and in each case he used the name of some builder with whom he had done business and with whose affairs he was familiar. This combination of circumstances was sufficient to establish a common plan and identity of method so connected as to have a strong tendency to overcome any claim of innocent intent in the uttering of the note charged in the indictment." (p. 9.)

Mr. Underhill in his work on Criminal Evidence (2d ed., § 89) says: " It is relevant to prove that the person whose intention is in question had performed acts of a precisely similar nature either before or after the act the intention of which is in question. * * * So, where the commission of an act alleged to be a crime is admitted by the accused but he denies that he intended to commit it or alleges that he did it without guilty knowledge, his doing similar acts, wholly independent and unconnected with that under investigation is relevant to show intention."

Mr. Wharton says: " In order to prove purpose on the defendant's part, system is relevant and in order to prove system, isolated crimes are admissible from which system may be inferred. * * * When the object is to show system, subsequent as well as prior offenses, when tending to establish identity or intent, can be put in evidence. The question is one of

induction and the larger the number of consistent facts, the more complete the induction is. The time of the collateral inculpatory facts is immaterial, provided they be close enough together to indicate that they are part of a system." (Wharton's Criminal Evidence [9th ed.], §§ 32 and 38.)

See also the interesting and instructive chapter of Professor Wigmore on " Other Offences, or similar acts, as evidence of knowledge, design or· intent." (1 Wigmore on Evidence, ch. 12.)

The defendant relies upon a case which I regard as a direct authority against him. (People v. Weaver, 177 N. Y. 434.) The indictment in that case contained two counts, the first for forging the name of one Davis as indorser on a promissory note made by the defendant and the second for uttering the note so indorsed with intent to defraud. The defendant testified that she believed she had implied authority from Davis to indorse his name on notes made by herself. Evidence given by the prosecution that she had indorsed the name of Davis on another note made by herself was held competent to prove *scienter,* but evidence that she had forged or uttered other notes which did· not purport to have been indorsed by Davis and which had no connection with the transaction in question was held incompetent. The evidence held competent in that case was the same in principle as the evidence involved in this, while that held incompetent was clearly so, for it simply tended to prove an independent crime, which had no connection whatever with the crime charged. As was said in People v. Dolan (186 N. Y. 4, 9), the Weaver case has not changed the rule upon the subject as laid down in the previous cases.

I think that no error was committed by receiving in evidence the eight mortgages, under the restrictions laid down by the trial court, and, as no other question requires discussion, the judgment should be affirmed.

CULLEN, Ch. J. (dissenting):

The appellant was indicted for and convicted of the crime of forgery in the first degree under section 510 of the Penal Code, by which it is enacted that "An officer authorized to take the proof or acknowledgment of an instrument which by law may be recorded, who willfully certifies falsely that the execution of such an instrument was acknowledged by any party thereto, or that the execution of any such instrument was proved, is guilty of forgery in the first degree." On Nov. 9, 1893, the defendant was a commissioner of deeds of the city of Brooklyn, and it was charged that on that day he willfully and falsely certified that one James Cahill of the city of Brooklyn, the mortgagor in a certain mortgage purporting to be made by the said Cahill to one Caroline Barry to secure the payment of the sum of $4,000, was known to him to be the individual described in and who executed said instrument and on that day had personally appeared before him, the defendant, and acknowledged that he had executed the same. On the trial it was shown that no man named Cahill had ever had any title to or interest in the mortgaged property, nor could such a man be found. The defendant was the attorney of Caroline Barry, the mortgagee. He gave her this mortgage, representing to her that on the security thereof he had loaned the mortgagor the sum of $4,000 which she had given him for investment, but which in reality he, the defendant, had appropriated to his own use. The prosecution claimed that James Cahill was a myth and that no such person or in fact any person had appeared before the defendant and acknowledged the execution of the instrument.

On the trial no evidence was given in behalf of the defendant, but against his objection and exception the prosecution was allowed to prove the certification of several other mortgages purporting to be made by persons other than said Cahill to said Caroline Barry as follows: By David Teare, dated June 15th, 1892, for $3,000; by John McKay, dated Aug. 8, 1892, for

14

$2,500; by Frederick Hoffman, dated Sept. 7, 1892, for $5,-000; by William J. Driggs, dated April 21, 1893, for $6,000; by Horace J. Tindall, dated June 15, 1893, for $5,000; by James Gillen, dated Aug. 5, 1893, for $5,500; by Robert F. Griffen, dated Dec. 9, 1893, for $3,500, and by Peter V. Ross, dated March 27, 1894, for $2,000. As to these evidence was given tending to show that the mortgagors named in them were fictitious persons and that the defendant had falsely certified to the acknowledgments thereof and had embezzled or misappropriated the money represented by them.

The only question raised on this appeal is the admissibility of these last-named securities and of the testimony given concerning them. The general rule of law is well established. Testimony which fairly tends to establish the commission by a defendant of the particular crime for which he is on trial is admissible even though such testimony also tends to prove that the defendant was guilty of one or twenty other crimes, but no testimony which does not tend to connect the defendant with the particular crime on trial is admissible on the theory that, because the defendant has been guilty of one or twenty crimes, even of the same character, it is probable that he committed the crime charged. Where knowledge is a necessary ingredient of the crime, evidence of similar acts by the defendant at or about the same time is admissible—thus, on a prosecution for uttering forged paper or counterfeit money, it is competent to show the uttering by the defendant of other paper or money. The reason for this is very plain. A person is often the innocent possessor of counterfeit money and at times, though not so often, the possessor of forged paper, and it may be that his attempt to pass the money or discount the paper was made in perfect good faith. But if a quantity of counterfeit money or forged paper was found to be uttered by him, the honest possession of which he does not explain, the inference would be

clear that he knew the character of the money or instruments he had sought to pass or use.

So also it would be competent and necessary to prove scienter in this case, but we should not hide ourselves behind generalities. We should analyze and see the exact scienter that could in any view of the case be material. The defendant could be convicted by the jury only upon the prosecution satisfying it of one of two things, either that Cahill was a myth and that no one acknowledged the execution of the mortgage before the defendant, or that if any one did acknowledge the instrument, it was not the person described in it, and the defendant know it. As to the first of these no possible scienter could be necessary, for if no one appeared before the defendant to make the acknowledgment then his certificate was not only necessarily false, but equally necessarily he knew it was false. As to the second theory, that though somebody might have acknowledged the instrument before the defendant, that person was not the person described in the mortgage, proof of scienter doubtless was necessary, that is to say, it was necessary to establish that the defendant knew that the person who appeared before him was not the same James Cahill described in the mortgage. On either of these theories other mortgages purporting to be executed by James Cahill than the one specified in the indictment would have been competent, because they would have tended to show knowledge by the defendant of the personalty of Cahill and his ability to produce him or account for him unless he was a myth, or if a person did actually appear before the defendant and acknowledge the instrument, the improbability of the defendant being deceived as to the identity of the person making the acknowledgment, and the more numerous such instruments, the stronger and more convincing would be the evidence. But evidence that the defendant certified to false acknowledgments purporting to be made at other times and by other parties would not in any manner tend to establish either that the defendant

did not take the acknowledgment of any one to the instrument charged in the indictment, or that if he did he knew that person was not Cahill, except on the general principle that a man who had committed one crime would very probably commit another. I do not deny the probative force of such evidence to the lay mind and possibly to all minds. If we know of a theft and that several persons have had an opportunity to commit it, if we also know that one of such persons has been a thief, we would very naturally suspect him of the crime. But our law has always been careful to exclude evidence of that character. It was said by one of the greatest lawyers this State has ever known, Mr. Charles O'Conor: " And accordingly, except under some statute expressly authorizing such a course, it has not been the practice to allow two distinct offenses to be tried at the same time, either by indictment or penal action. Besides the confusion and embarrassment in which a trial at one time for many offenses would involve the accused, such a practice, if tolerated, would break down and utterly obliterate many principles of law that are not only well established, but essential to the safety of the citizen. Nothing is better settled than that the evil reputation of the accused shall not be offered to strengthen the proofs against him. That other misdeeds shall not be alleged, proved, or attempted to be proven, is equally well known law." That statement was quoted by this court with approval in the case of People ex rel. Tweed v. Liscomb (60 N. Y. 559, 580). In the same case it was said by Judge Rapallo (p. 595) : " Laws are framed not merely to secure the punishment of those who are justly accused, but to afford a fair trial to all and guard against convictions being obtained through improper means or influences. The law, therefore, furnishes, as far as possible, to every defendant, the means of knowing precisely of what he is accused, of securing an impartial jury, and all reasonable opportunity for presenting his defense; and it prohibits the introduction against him of any evidence not bearing

upon the question of his guilt of the particular crime charged, and carefully excludes evidence which merely tends to create prejudice against him by showing that he is a person of bad character, or guilty of crimes other than that for which he is upon trial."

I have already said that we should not be misled by generalities. "Error lurks in generalities." Something has been said about the necessity of proving criminal intent. It is not necessary to establish any criminal intent in this case other than to do the act made criminal by the statute, that is to say, to knowingly certify falsely to the acknowledgment. Of course it is competent to prove motive, and proof of the embezzlement by the defendant of the sum which he represented had been loaned on the mortgage was competent. But evidence of previous crimes did not tend to establish a motive for the commission of the one on trial. What he did with the money so long as he had appropriated it to his own use was immaterial. Nor is there any force in the argument that the defendant's acts were part of a general scheme to defraud. Each offense was complete in itself. They were no more parts of a single crime than might be said of the action of a professional thief or pickpocket that it was part of a general scheme to take the money of any one from whose pocket he could successfully extract its contents and whose appearance indicated sufficient prosperity to make the booty worth the risk of detection.

It is not necessary, however, to rest the conclusion which I have reached on principle alone. Authority sustains it. I insist we have decided the exact question in the case of People v. Weaver (177 N. Y. 434). In that case the defendant was indicted and convicted of having forged the name of one Martin Davis as indorser on her note. On the trial of the action she claimed that she believed that she had Davis' authority to indorse her own note in his name. Other notes negotiated by the defendant with indorsements claimed to have been forged

by her were put in evidence by the prosecution. One of these notes purported to bear the indorsement of Davis, the others that of other parties. It was held (p. 447) : " 1. That the five thousand dollar note, purporting to bear the indorsement of Davis, was competent evidence to prove scienter on the part of the defendant.

" 2. That it was error to allow the witness Davis to testify or refer to the other notes alleged to be forged but which did not purport to be indorsed by Davis.

" 3. That the admission in evidence of such alleged forged notes was error." For this error the conviction was reversed.

This judgment should be reversed and a new trial ordered.

HAIGHT, HISCOCK and CHASE, JJ., concur with VANN, J.; WILLARD BARTLETT and COLLIN, JJ., concur with CULLEN, Ch. J.

Judgment of conviction affirmed.