THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* GRACE K. GERKS, Appellant.

**Crimes — trial — charge — evidence — forgery in second
degree — issuing fictitious bill of lading — refusal to charge
that jury must find criminal intent as to each of other ficti-
tious bills, received in evidence on question of intent, before
considering them in relation to one under consideration,
proper — possible erroneous refusal to permit plaintiff to say
why she believed herself entitled to sign bills unimportant
where facts are brought out later.**

1. Upon trial of an indictment charging defendant with forgery in
issuing a fictitious bill of lading, where other bills of lading, apparently
parts of similar transactions, reasonably connected in time and char-
acter with the one under consideration, had been offered in evidence
by the People and received as tending to establish motive, or intent
or absence of mistake, a refusal to charge that the jury must first
find that each of such bills of lading was signed by defendant with
criminal intent to defraud before they could be considered in connec-
tion with the one for issuance of which defendant was being tried, was
proper. As bearing upon intent the jury were at liberty to consider
the fact that the particular bill of lading in question was one among
a series of fictitious bills, issued at different times but in fulfillment of
a common plan. Each of them when shown to be fictitious cast light
upon the intent that was behind the making of every other. The
first throws light upon the last, but equally the last throws light upon
the first. (*People* v. *Altman*, 147 N. Y. 473, distinguished.)

2. Defendant having been permitted to testify that she had no
intention to defraud and that she believed herself privileged to sign
the station agents' names, though they had not authorized her to do
so, a refusal of the court at one point to let her say why she believed
this and to state her employers' instructions with reference thereto, if
error, is unimportant where the facts were brought out later.

*People* v. *Gerks*, 217 App. Div. 714, affirmed.

(Argued June 9, 1926; decided July 9, 1926.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the fourth judicial department,
entered May 5, 1926, which affirmed a judgment of the

Orleans County Court, rendered upon a verdict convicting the defendant of the crime of forgery in the second degree.

*Arthur V. D. Chamberlain* for appellant. The exceptions taken during the trial to the admission and rejection of evidence require reversal. (*People* v. *Weaver,* 177 N. Y. 434; *People* v. *Corbin,* 56 N. Y. 363; *Kerrains* v. *People,* 60 N. Y. 221; *Filkins* v. *People,* 69 N. Y. 101; *People* v. *Dinser,* 49 Misc. Rep. 82; *People* v. *Johnston,* 186 App. Div. 248; *People* v. *Molineux,* 168 N. Y. 264; *People* v. *McKeon,* 64 Hun, 504.) The exceptions to the court's charge and the court's refusal to charge as requested present error requiring reversal. (*People* v. *Altman,* 147 N. Y. 473; *People* v. *Van Tassel,* 156 N. Y. 561; *People* v. *Barker,* 153 N. Y. 111.) This is not a case where the court can disregard the errors under section 542 of the Criminal Code. (*People* v. *Gerdvine,* 210 N. Y. 184; *People* v. *Harris,* 209 N. Y. 70; *People* v. *Altman,* 147 N. Y. 473; *People* v. *Tribus,* 219 N. Y. 18; *People* v. *Milch,* 178 App. Div. 875; *People* v. *Smith,* 172 N. Y. 210.)

*Gordon H. Payne, District Attorney* (*William H. Munson* of counsel), for respondent. The exceptions taken during the trial to the admission and rejection of evidence do not require reversal. (*People* v. *Gaffey,* 182 N. Y. 257.) The exceptions to the court's charge, and the court's refusal to charge as requested present no error requiring reversal. (*People* v. *Peckens,* 153 N. Y. 576; *People* v. *Katz,* 209 N. Y. 311; *People* v. *Molineux,* 168 N. Y. 264; *People* v. *Malone,* 205 App. Div. 257; *People* v. *Shulman,* 80 N. Y. 373; *People* v. *Hudson Valley Co.,* 217 N. Y. 172; *People* v. *Everhardt,* 104 N. Y. 591; *People* v. *Conrad,* 102 App. Div. 566.) No errors affecting the substantial rights of the defendant were committed. (*People* v. *Meyer,* 162 N. Y. 357; *People* v. *Brandsby,* 32 N. Y. 525; *People* v. *Swerski,* 216 N. Y. 471; *People* v. *Ferola,* 215 N. Y. 285.)

**168** PEOPLE *v.* GERKS.

CARDOZO, J. The defendant was employed by the Lewis E. Sands Company as a general office assistant. She had care, in particular, of its transactions with the banks. The Sands Company, which was engaged in the business of selling beans, had an account with the Union Trust Company of Rochester, where it had a line of credit of $90,000. It borrowed money from the trust company through the discount of drafts drawn on its customers with bills of lading attached. The Sands Company became badly embarrassed early in 1924, and bankruptcy was even then discussed by the directors in the presence of the defendant. Business went on, however, for some months, though with accumulating difficulties. They accumulated so fast that fictitious collateral was fabricated in the effort to escape them. On September 5, 1924, the defendant filled out the bill of lading set forth in the indictment, signing thereto the names of Mahoney and Ellis, the New York Central agents at Albion, New York. She admits that she did this without authority from either of them. A draft for $2,800 with the fictitious bill of lading attached to it was presented to the trust company, and by it discounted in the belief that the security was genuine. Another draft for $2,400 with a bill of lading also forged was discounted at the same time. These were not, however, the first offenses. Nine other bills of lading had already been forged by the defendant and used in the same way. Bankruptcy followed on September 12, 1924.

When the crash came, the defendant went to San Antonio, Texas, where she met Lewis E. Sands, the president of the company. They remained there till word came that a warrant was out for their arrest. Upon this they separated, going in opposite directions, Sands to Florida, and the defendant to Huntington, Indiana. In Texas and in Indiana, she lived at times under the assumed names of " Grace Richards " and " Edna Grey." Before leaving Albion, she told the attorney for the Sands

1926.] Opinion, per CARDOZO, J. [243 N. Y. 166]

Company that she had forged a number of bills of lading. She made the same admission to the district attorney at Buffalo, on her return from Indiana, saying also that she had done this to keep the company going. There was little variance from these admissions in her testimony upon the trial. By her testimony as by her admissions, she had signed the names of the railroad's representatives without their knowledge or authority. She had done this, she protested, because her employers had instructed her accordingly, and what they told her she believed was right. Even so, she had made out the instruments and sent them to the trust company for the purpose of obtaining money, and this for an employer whose embarrassments were known. She was thirty-three years of age, and in those years had acquired not a little experience in business. She owned all the stock of the Brayton Bean Company, a subsidiary of the Sands Company. She also ran a roadhouse known as the Lone Star Inn. Despite this background of experience, her defense reduced itself to a denial that she had any intention to defraud. The jury refused to find her so ingenuous. A different verdict was hardly possible unless duty was to be ignored.

On this appeal the chief question grows out of the court's refusal of one of the requests to charge. The court had said in the body of the charge: " These other bills of lading appear to have been parts of similar transactions, reasonably connected in time and character with the one under consideration, and the purpose of the People in offering them and the purpose of receiving them was that it might be considered by you as tending to establish a motive or an intent or an absence of mistake." When the charge was ended, the defendant's counsel recurred to this subject with the following request: " I ask the court to charge the jury that before they are permitted to consider the nine other bills of lading offered in evidence here upon the question of intent, that they must first find that each one of those bills of lading was signed by

her with the criminal intent to defraud." The Court: "I refuse to charge that. They must find that they were transactions of a similar nature to the one under consideration."

We think the ruling is correct, though there is plausible argument for error. The question to be determined was the fraudulent intent of the defendant in making and issuing a fictitious bill of lading. As bearing upon that intent, the jury were at liberty to consider the fact that this particular bill of lading was one among a series of fictitious bills, issued at different times, but in fulfillment of a common plan (*People* v. *Marrin*, 205 N. Y. 275; *People* v. *Katz*, 209 N. Y. 311, 328; *Mayer* v. *People*, 80 N. Y. 364; *People* v. *Shulman*, 80 N. Y. 373; Wigmore, Evidence, § 302). Each one of them, when shown to be fictitious (*People* v. *Altman*, 147 N. Y. 473), cast light upon the intent that was behind the making of every other. The intent was not something to be found separately for each as a preliminary fact, before any one of them could be considered in relation to the bill in controversy, but the mass, when viewed together, had a cumulative value in giving meaning to the parts. A defendant is indicted, let us say, for issuing a counterfeit bank bill. He protests that he issued it innocently. Evidence is offered that he issued another bill, also counterfeit, the day before (*People* v. *Marrin, supra*, at p. 285; *People* v. *Dolan*, 186 N. Y. 4; *People* v. *Shulman, supra;* 1 Wigmore, Evidence, § 309). A finding that there was fraudulent intent in the earlier transaction does not precede the consideration of its significance in relation to the second. The two are to be viewed conjunctively, with all the sidelights cast by one upon the other. Repetition reduces the likelihood of mistake or mere coincidence. We miss the evidence of system when we ignore the succession, and concentrate our gaze upon the isolated acts (1 Wigmore, Evidence, §§ 302, 321, p. 637).

What is true of counterfeit money in the case supposed

for illustration, is true, and for like reasons, in this case of fabricated documents. The ten forgeries collectively elucidate and characterize the purpose served by each. There is no analogy between such a case and *People* v. *Altman* (147 N. Y. 473), where the earlier acts to be compared were not shown to be wrongful. Here the acts are undisputed, and the only element of criminality that is doubtful is the state of mind accompanying them. On the trial the defendant took the position that she had not attempted to imitate the genuine signatures of the agents of the railroad. This circumstance was relied upon as significant, though not decisive, of innocent intention. An expert in handwriting, a witness for the People, examined the signatures, and found the marks of simulation. Here was a situation in which repetition was significant. Correspondences might be thought to be accidental or uncertain if discovered in a single instance. A jury could hardly hold them to be other than intentional if rediscovered in a dozen. Other phases of the defense bring out the same conclusion. The defendant took the position that in filling out the documents, she followed the orders of superiors, heedlessly and blindly. The People might legitimately contend that the multiplication of the forgeries and the scope of the fraudulent transactions gave opportunity for reflection and for foresight of the consequences. Illustration could be multiplied, but there is no need to elaborate the argument. We are unwilling to announce a rule that an earlier forgery may not even be considered in its bearing on a later one unless found at the outset to have been made with fraudulent intent. The first throws light upon the last, but equally is it true that the last throws light upon the first.

If error, however, were to be assumed, our duty would still be to disregard it as not affecting the result (Code Crim. Pro. § 542). Again and again the jury were instructed in the body of the charge that the defendant

was not to be convicted unless found to have acted with fraudulent intent. If the defendant acted innocently, believing that what she did was right, the jury were to acquit her. The changes were rung upon this theme to such an extent that misunderstanding was impossible. Whatever the significance of documents of earlier date, the jury cannot have been doubtful that unless the particular document set forth in the indictment had been made with fraudulent intent, there must be a verdict of acquittal. In these circumstances, the attempted distinction in respect of quality of intention between this transaction and the others is merely abstract and unreal, without relation to the facts. The defendant would have us suppose that the jury believed the earlier fabrications to be innocent, and yet were swayed by what was innocent to a verdict that the final· one was fraudulent. We do them wrong when we impute to them for the impeachment of their verdict a course of reasoning so tortuous.

A word should be said as to some rulings upon evidence. The trial judge allowed the defendant to testify that she had no intention to defraud and that she believed herself privileged to sign the station agents' names, though they had not authorized her to do so. He refused at one point to let her say why she believed this, and to state her employers' instructions with reference thereto. The error, if any, is unimportant, for the facts were brought out later. The defendant stated on her redirect examination that her instructions with reference to the signing of these names had come from her employers; that she supposed they would not act without authority; and that in this belief she signed.

Other rulings challenged in the defendant's brief are so plainly without error that discussion becomes needless.

The judgment should be affirmed.

HISCOCK, Ch. J., POUND, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgment affirmed.