THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROGER C. DALES, Appellant.

Argued May 25, 1955; decided July 8, 1955.

*Joseph P. Leary* and *Francis H. Anderson* for appellant.
I. Admission of other incompetent transactions was prejudicial and constitutes reversible error. (*People* v. *Molineux,* 168 N. Y. 264; *People* v. *Richardson,* 222 N. Y. 103; *People* v. *Horie,* 258 App. Div. 246; *People* v. *Weaver,* 177 N. Y. 434; *People* v. *Corbin,* 56 N. Y. 363; *People* v. *Altman,* 147 N. Y. 473; *Coleman* v. *People,* 55 N. Y. 81; *People* v. *Zackowitz,* 254 N. Y. 192; *People* v. *Dolan,* 186 N. Y. 4; *People* v. *Rutman,* 260 App. Div. 784; *People* v. *Gerks,* 243 N. Y. 166; *People* v. *Marrin,* 205 N. Y. 275; *People* v. *Everhardt,* 104 N. Y. 591.) II. The court erroneously failed to require the production of papers for inspection and use during the trial. (*People* v. *Pauley,* 281 App. Div. 223; *People ex rel. Heller* v. *Heller,* 184 Misc. 75; *Thomas* v. *Morris,* 286 N. Y. 266.) III. Defendant was denied a fair trial. (*People* v. *Weaver,* 177

N. Y. 434; *People* v. *Robinson,* 273 N. Y. 438; *People* v. *Levan,* 295 N. Y. 26; *People* v. *Tassiello,* 300 N. Y. 425; *People* v. *Dixon,* 118 App. Div. 593; *People* v. *Becker,* 210 N. Y. 274.)

*Richard J. Bookhout, District Attorney,* for respondent. I. Evidence of other dealings between this defendant and the bank involving financing of car sales was properly received on the question of defendant's intent. (*People* v. *Gerks,* 243 N. Y. 166; *People* v. *Marrin,* 205 N. Y. 275; *People* v. *Dolan,* 186 N. Y. 4; *People* v. *Everhardt,* 104 N. Y. 591; *People* v. *Rutman,* 260 App. Div. 784; *People* v. *Hudson Valley Constr. Co.,* 217 N. Y. 172; *People* v. *Katz,* 209 N. Y. 311; *People* v. *Goldstein,* 295 N. Y. 61; *People* v. *Molineux,* 168 N. Y. 264; *People* v. *Weaver,* 177 N. Y. 434.) II. There was no error in the court's rulings on production of various papers during the trial. (*People* v. *Pauley,* 281 App. Div. 223; *People* v. *Miller,* 257 N. Y. 54; *People* v. *Walsh,* 262 N. Y. 140.) III. If there be any error in the lengthy trial, it was technical only and did not affect the substantial rights of defendant. (*People* v. *Gerks,* 243 N. Y. 166; *Davis* v. *Bickle,* 230 App. Div. 580; *People* v. *Sheldon,* 156 N. Y. 268; *People ex rel. Stabile* v. *Warden of City Prison,* 202 N. Y. 138.)

FULD, J. On this appeal from a judgment convicting defendant of the crime of uttering a forged instrument with intent to defraud (Penal Law, § 887), the primary question posed concerns the admissibility of evidence of similar crimes.

Defendant was in the business of buying and selling used cars in Oneonta, New York, and, in connection with that business, had almost daily dealings with the Citizens' National Bank. The transaction of which he stands convicted involved a promissory note for $700; it purported to be signed by an employee, Utter, as maker, and carried defendant's own signature as indorser. The note, delivered to the bank in renewal of a previous note of Utter's, recited that it was given as part of the purchase price on a 1944 Chevrolet truck, and provided that the holder could sell the truck in the event of a default. It appeared that defendant had not sold the truck to Utter, that neither he nor Utter had title to it, and that it was defendant who had signed Utter's name to the note. His claim that he was authorized to do so was denied by Utter.

During the course of the extensive trial, the defense elicited considerable testimony concerning the course of dealings between defendant and the bank, the purpose being, apparently, to show that the bank had not been defrauded and that defendant had not intended it to be; that defendant was considered one of its best accounts; and that the bank was trying to conceal in some way its own laxness and negligence in the handling of the account. The greater portion of the Appellate Division's opinion was devoted to the question whether defendant had acted '' with intent to defraud ''; thus, it considered whether the bank was adversely affected by accepting the note and whether it relied upon the forged signature and the recital of the fictitious truck as security. The Appellate Division concluded that '' the record sufficiently establishes * * * intent to defraud '', and these matters are not now urged upon us.

The major ground advanced for reversal has to do with the admission of evidence concerning three other documents, consisting of conditional sales contracts, which defendant had negotiated to the bank, each involving either a spurious signature or a fictitious vehicle described as collateral. These transactions, all having occurred shortly before the delivery of the Utter note, were received in evidence on the question of defendant's intent in uttering the latter instrument.

The purported purchaser named in the first of these three contracts, one Travis, denied that he had ever signed it or authorized defendant to do so. The second transaction involved a conditional sales contract purportedly conveying a 1950 Chevrolet station wagon; the '' buyer '', Harkenreader, also in defendant's employ, testified that, although his signature was genuine, he had never purchased any station wagon, but had simply signed the paper for defendant at a time when he '' was quite busy ''. The ostensible purchaser involved in the third transaction, another of defendant's employees, named Gilmore, refused on constitutional grounds to answer whether the signature of his name was genuine; there was proof, however, that Gilmore never owned the car which was described as the collateral and that defendant had sold that car to another person many months earlier.

Evidence of such transactions, even if they spell out independent crimes, is ordinarily admissible on the question of intent, and defendant does not dispute this. He argues, however, that

such proof was incompetent in this case, because one of his defenses was that he had acted with the authority of the person whose name he was charged with forging.

It requires no more than a brief consideration of the rules governing the admissibility of other crimes to demonstrate the propriety of the trial court's admission of the challenged evidence. The principles that have been evolved represent a balance between the probative value of such proof and the danger of prejudice it presents to an accused. When evidence of other crimes has no bearing other than to show that defendant is of a criminal bent or character and thus likely to have committed the crime charged, it is excluded. Where, however, it is relevant to negative the existence of accident or mistake, or to show the intent or motive with which the defendant acted, or a common scheme or plan, its probative value is deemed to outweigh the danger of prejudice, and the rules dictating exclusion will yield. (See, e. g., *People* v. *Molineux,* 168 N. Y. 264, 291–293; *People* v. *Gaffey,* 182 N. Y. 257; see, also, McCormick on Evidence [1954], § 157, p. 327 *et seq.*; 2 Wigmore on Evidence [1940], §§ 300–307, pp. 192–207.) Particularly in the instance of such crimes as uttering forged or counterfeit papers — where, in contrast to assault, robbery and the like, the act is equivocal, and the underlying intent not easily to be inferred — " Such evidence has been sanctioned for time out of mind ". (*People* v. *Marrin,* 205 N. Y. 275, 283; see, also, *People* v. *Gerks,* 243 N. Y. 166; *People* v. *Dolan,* 186 N. Y. 4; *People* v. *Molineux, supra,* 168 N. Y. 264, 297–298; *People* v. *Everhardt,* 104 N. Y. 591; Note, 62 L. R. A. 193, 249, 257; 2 Wigmore, *op. cit.,* §§ 309–317, pp. 208–218.) In truth, it is recognized that " proof of intent is often unobtainable except by evidence of successive repetitions of the act." (*People* v. *Molineux, supra,* 168 N. Y. 264, 298.) Beyond that, to quote from Wigmore, " the oftener a like act has been done, the less probable it is that it could have been done innocently " (*op. cit.,* p. 215).

There can be no doubt, then, that the evidence of the other transactions admitted during the course of the trial below had an important bearing on the vital issue whether the defendant uttered the forged note *with intent to defraud,* separate and apart from any question bearing upon his defense of authority. As already observed, the major part of the Appellate Division's

opinion was devoted, not to defendant's asserted authority, but to the "somewhat closer question * * * whether the uttering of a forged note ' with intent to defraud ' as pleaded in the indictment has been established sufficiently to support the jury's finding in this respect." Furthermore, it was the defendant himself who elicited considerable testimony concerning his past dealings with the bank, as well as evidence of other notes and contracts covering used car sales. Since that was so, since defendant introduced evidence of these matters to negative fraudulent intent, the prosecution was certainly privileged to attempt to establish the existence of such intent by showing that, in still other dealings with the bank, defendant had committed other forgeries, of a pattern almost identical with that here disclosed.

Nor is the competence of such evidence affected by the circumstance that defendant's authority to sign may also happen to be in issue. Were the rule otherwise, the accused could render evidence of that sort inadmissible in every case — no matter how vital it might be on the question of intent or motive or common scheme and plan — by the simple expedient of advancing a claim of authority. In such a situation as the present, the decision in *People* v. *Weaver* (177 N. Y. 434)[1] — upon which defendant strongly relies — requires no more than that the court limit the evidence of other transactions to the question of intent to defraud, directing the jury not to consider it insofar as the defense of authority is concerned. And that is precisely what the court did in the case before us, and in most plain and forceful fashion.

Of defendant's remaining points, the only ones that warrant any discussion at all relate to the court's failure to order the production of (1) a written statement given by Utter to the police sometime before the trial and (2) the minutes of the testimony given by several witnesses before the grand jury concerning the Gilmore transaction.

Since the district attorney made no use at the trial of the grand jury minutes or Utter's statement, the defendant was,

---

1. The *Weaver* case (*supra*, 177 N. Y. 434) was not intended to, and did not, effect any change in rules long settled (see *People* v. *Marrin, supra*, 205 N. Y. 275, 287; *People* v. *Dolan, supra*, 186 N. Y. 4, 9); its holding must be limited to its peculiar facts.

of course, not entitled to either of them under the rule announced in *People* v. *Miller* (257 N. Y. 54, 57). However, if defense counsel desired Utter's statement or the grand jury testimony of other witnesses for the purpose of cross-examining them, then, defendant would have been entitled to examine the statement or minutes if — to state the rule broadly — the court, upon inspection, had found that they contained material at variance with the testimony given by the particular witness on the stand. (See, e. g., *People* v. *Boniello,* 303 N. Y. 619; *People* v. *Schainuck,* 286 N. Y. 161, 165–166; *People* v. *Walsh,* 262 N. Y. 140, 149–150.) The trial judge below, so far as appears, did not examine either Utter's statement or the grand jury minutes. They were, however, left with us, and examination of them reveals no contradictions or inconsistencies with any testimony given at the trial. Since that is so, the defense was not privileged to use or inspect the items in question, and the trial court committed no error in refusing the defense request. (See *People* v. *Boniello, supra,* 303 N. Y. 619; *People* v. *Walsh, supra,* 262 N. Y. 140, 149; *People* v. *Miller, supra,* 257 N. Y. 54, 57–58, 60.)

The judgment of the Appellate Division should be affirmed.

CONWAY, Ch. J., DESMOND, DYE, FROESSEL, VAN VOORHIS and BURKE, JJ., concur.

Judgment affirmed.