306

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE CHAMBERLAIN, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ANTHONY CERRA, Appellant.

Fourth Department, February 25, 1972.

*Bernard D. Levine* for George Chamberlain, appellant.

*Jack B. Lazarus, District Attorney (Edward J. Spires* of counsel), for respondent in first above-entitled case.

*Nicholas P. Varlan (James J. Sullivan* of counsel), for Anthony Cerra, appellant.

*Jack B. Lazarus, District Attorney (Melvin Bressler* of counsel), for respondent in second above-entitled case.

CARDAMONE, J. Appellants, Chamberlain and Cerra, appeal from a judgment of conviction after a jury trial in which they were found guilty of all 13 counts of an indictment charging them with two counts of criminal possession of a forged instrument, two counts of petit larceny, and one count of conspiracy committed on March 17, 1970, and six counts of criminal possession of a forged instrument, one count of petit larceny, and one count of conspiracy committed on April 20, 1970.

Kathleen Parmele testified that on March 17, 1970 she went to the Star Market Store No. 22 in Rochester where, after identifying herself as the payee, she presented a check to be cashed, drawn on the account of Partition Systems Company and payable to "Mary Marcone" in the amount of $133.63. She purchased a small amount of groceries, taking the balance of the proceeds in cash. She repeated the procedure at Star Market Store No. 8 with another check on the same account in the same amount also made payable to "Mary Marcone". As a witness for the People she further testified that she had been pressured into taking part in these forgeries by the appellants, who threatened to create difficulties for her with her probation officer if she failed to co-operate. It was they, she testified, who approached her, supplied the checks, the typewriter and check imprinter and instructions on how to complete the checks, provided phony identification, instructions on cashing the checks, transportation to and from the stores and agreed to and did share with her in the proceeds. Parmele was granted immunity for her part in the crimes committed on March 17, 1970.

Raymond Steed was the principal prosecution witness regarding those counts charging these defendants with the crimes committed on April 20, 1970. Steed testified that prior to April 20 he had agreed with appellants to cash some payroll checks and split the proceeds with them. On April 20, appellants provided

Steed with a driver's license issued to "William Foley" and directed him to open a Security Trust Bank Savings account and acquire a passbook in that name. After he did this, Steed returned to Chamberlain's house and was directed to go to several Security Trust Bank branches and cash a number of checks on the account of Partition Systems Company and made payable to "William Foley" in varying amounts of about $240. Steed was instructed on how to proceed and whom to see at each bank. He was provided transportation and was directed to sign the maker's signature while riding to the banks and to indorse the payee's name after entering each bank. Steed testified that in exchange for his co-operation he was permitted to plead to a misdemeanor for his part in these crimes.

The remainder of the testimony included evidence of prior similar but uncharged crimes allegedly committed by these appellants as well as evidence directed toward corroboration of the testimony of the accomplices Parmele and Steed. Appellants have questioned the propriety of the former and the adequacy of the latter.

The court permitted Parmele and Steed to testify that they each had been involved with appellants in a similar check cashing arrangement on occasions other than those for which the defendants were indicted. In addition, another prosecution witness, William DeRose, testified to his involvement with the appellants in the commission of several other similar crimes for which the defendants were not on trial. DeRose told of a similar pattern to that related by Steed and Parmele. Appellants provided DeRose with phony identification, directed him to sign as maker, indorse the checks as payee and pass them one at a time at various Midland Branch Banks and drove him to the branches. DeRose identified seven checks which he had cashed pursuant to their plan. Defense counsel objected continually to the testimony of DeRose and also that of Steed and Parmele insofar as it related to other uncharged crimes. The trial court received this testimony on the theory that since this was a forgery case, evidence of uncharged crimes was admissible on the issue of intent to defraud.

The Court of Appeals had occasion recently to speak on the use of evidence of uncharged crimes to prove the defendant's intent. In *People* v. *McKinney* (24 N Y 2d 180, 184–185) the court stated that: "The basic rule concerning use of evidence of uncharged crimes and offenses is that such evidence is inadmissible if offered for no purpose other than to raise an inference that a defendant is of a criminal disposition and, there-

fore, likely to have committed the crime charged (*People* v. *Goldstein,* 295 N. Y. 61). The rules governing the admissibility of uncharged crimes represent a ' balance between the probative value of such proof and the danger of prejudice which it represents to an accused.' (*People* v. *Schwartzman,* 24 N Y 2d 241; *People* v. *Dales,* 309 N. Y. 97; see, also, *People* v. *Molineux,* 168 N. Y. 264, 291–294; McCormick, Evidence [1954], § 157; Fisch, New York Evidence [1959], § 209). Thus, evidence of other crimes is admissible if directly probative of the crime charged for in that event the evidence is relevant for a purpose other than to show a criminal disposition and its probative value is deemed to outweigh the danger of prejudice. (*People* v. *Schwartzman, supra.*) *As these principles have been applied in our decisions to evidence sought to be introduced to prove a defendant's intention in the crime charged, the probative ' balance' has generally warranted admission of this evidence only where the acts involved in the crimes charged are equivocal so that intention is not easily inferred from the acts alone.* (*People* v. *Schwartzman, supra,* pp. 247–248; cf. *People* v. *Molineux, supra,* pp. 297–299; cf. *People* v. *Peckens,* 153 N. Y. 576; cf. *Mayer* v. *People,* 80 N. Y. 364; cf. Richardson, Evidence [9th ed., 1964], § 177.) ' In such cases it is recognized that '' proof of intent is often unobtainable except by evidence of successive repetitions of the act.'' ' (*People* v. *Schwartzman, supra,* p. 248; *People* v. *Molineux, supra,* p. 298.) '' (Emphasis added.)

Appellants argue that there was not, in this case, any question of intent. The acts attributed to the appellants were not in any way equivocal and the necessary intent to defraud could easily be inferred from the acts themselves. Accordingly, they argue that there is no basis for admitting evidence of other crimes. The People's position implies in effect that in all check forgery cases evidence of other similar crimes is per se admissible to show intent.

We find no authority for the proposition that *all* forgery cases involve equivocal acts and thus always allow for evidence of other similar acts. We do not read *People* v. *Molineux* (168 N. Y. 264) nor the more recent case of *People* v. *Dales* (309 N. Y. 97), relied upon so heavily by the prosecution, as so holding.

The test in a given case is whether the acts are such as to allow the intent to be easily inferred from them. (*People* v. *Schwartzman,* 24 N Y 2d 241, *supra*; *People* v. *McKinney,* 24 N Y 2d 180, *supra*.) As to the crimes committed on March 17 and April 20, each accomplice testified to a system by which defendants would provide the accomplice with false identifica-

tion, checks on a defunct account, detailed instructions on forging the signature of both the maker and the payee, directions for cashing the checks at a series of stores or banks, transportation to the cashing places, and a portion of the proceeds. If this testimony was believed, then the intent to defraud on the part of the defendants could easily be inferred, since the acts testified to were unequivocal. There is no conceivable position that could be taken by the defendants which would make their actions equivocal (cf. *People* v. *Marrin,* 205 N. Y. 275, 280). Nor did the defendants advance any such position (cf. *People* v. *Dales, supra,* with *People* v. *Boose,* 25 A D 2d 606). In view of the quantity of that evidence its admission was prejudicial to the appellants. Accordingly, the judgment should be reversed and a new trial had on all counts.

Appellants also raise issues relating to the sufficiency of the corroboration of the testimony of accomplices Steed and Parmele, as required by section 399 of the Code of Criminal Procedure (in effect at the time of the trial). The required corroboration may be either direct or circumstantial (*People* v. *Mullens,* 292 N. Y. 408; *People* v. *Brown,* 30 A D 2d 279) and is sufficient " if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth." (*People* v. *Dixon,* 231 N. Y. 111, 116). The corroborative evidence must do more than show that the crime has been committed. It must tend to show that the defendant was implicated in its commission (*People* v. *Nitzberg,* 287 N. Y. 183, 191–192). As the court stated in *People* v. *Morhouse* (21 N Y 2d 66, 74) : " the corroboration requirement of section 399 of the Code of Criminal Procedure is fully met when there is some nonaccomplice evidence fairly tending to connect the defendant with the commission of the crime * * *. The corroboration need not, as must circumstantial evidence, lead exclusively to the inference of the defendant's guilt. As this court has noted, even ' Matters in themselves of seeming indifference * * * may so harmonize with the accomplice's narrative as to have a tendency to furnish the necessary connection between the defendant and the crime ' (*People* v. *Dixon,* 231 N. Y. 111, 116–117; see, also, *People* v. *Crum,* 272 N. Y. 348, 353–354; *People* v. *Malizia,* 4 N Y 2d 22, 27; *People* v. *Reddy,* 261 N. Y. 479, 484.) "

Under certain circumstances evidence that the defendant was at the place of the crime or in the presence of the accomplices shortly before or after the crime is corroboration of their statements (*People* v. *Kress,* 284 N. Y. 452; *People* v. *Laman,* 273

App. Div. 377, affd. 298 N. Y. 462). Evidence of flight may also be taken as corroborative of an accomplice's incriminating testimony (*People* v. *Reddy, supra,* p. 486).

The nonaccomplice's testimony as it relates to the crimes testified to by accomplice Steed (1) placed the appellant Chamberlain at the scene of the crime at the time of its commission conversing with Steed and/or his driver; (2) identified him as the renter of the automobile used by Steed; and (3) identified him as one who fled the scene leaving his driver's license with an investigating officer. In our opinion this evidence was properly submitted to the jury for their determination as to its credibility and as to its tendency to connect defendant Chamberlain with the commission of the crimes of April 20, 1970 (*People* v. *Fiore,* 12 N Y 2d 188; *People* v. *Dixon, supra,* p. 117; *People* v. *Reddy, supra,* p. 484).

The corroboration of the testimony of accomplice Parmele is a more difficult matter. The respondent argues that there was sufficient corroboration through the testimony of Roger Buchard, a document examiner for the New York State Police. His testimony was essentially that he had examined one of the checks cashed by Parmele and one of the checks cashed by Steed and a check cashed by William DeRose, and found that they all had been typed on a Royal typewriter with Gothic type and a Hall-Walter Check Imprinter. Additionally, all were written on the same defunct account. The connection of the crimes with each other by itself would not tend to connect appellants with the crimes to which Parmele testified. However, if the connection between the crimes is coupled with the connection between appellants and one of the crimes, there results a connection, albeit an indirect one, between appellants and the other crime. This indirectness is a matter to be considered by the jury when weighing the sufficiency of the corroborative evidence.

The link connecting the appellants with Steed's crimes consists of Steed's direct testimony as well as the corroboration of that testimony. Quite obviously the chain connecting appellants to Parmele is stronger if both are employable. There is nothing objectionable about using the corroborating evidence also to corroborate Parmele. The question arises as to whether Steed's direct testimony may be used to help corroborate Parmele. The basic rule is that one accomplice cannot corroborate another (*People* v. *Jelke,* 1 N Y 2d 321; *People* v. *O'Farrell,* 175 N. Y. 323, 327). If the crimes were wholly unrelated, accomplices to the separate crimes could corroborate each other. On the other hand, if they were conspiring together in commission of the

same crime, sufficient nonaccomplice testimony would be needed to connect the defendants to the crime (cf. *People* v. *Luciano,* 277 N. Y. 348) since the accomplices are not permitted to corroborate one another. This case presents facts regarding the accomplices' relationship to each other and the defendant principals which prevent a determination on the admissibility of accomplice testimony as a matter of law. Accordingly, on the retrial of this case, we believe that this matter should be submitted to the jury as a question of fact. The jury should be instructed that if they find that either Steed or Parmele may reasonably be considered to have participated in an offense based upon the same or some of the same facts or conduct which constituted the offense which the other committed, they must conclude that they are accomplices and may not corroborate one another. But, if not, then they are not accomplices and the testimony of each may be received as corroboration for the other.

In each case the judgment should be reversed and a new trial granted.

MARSH, J. P., GABRIELLI, MOULE and HENRY, JJ., concur.

Judgments unanimously reversed on the law and facts and a new trial granted.