THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRED E. LAMAN and CLAUDE H. HENDERSON, Appellants, et al., Defendants.

Third Department, March 24, 1948.

*Chernin & Gold,* attorneys (*A. E. Gold* of counsel), for Claude H. Henderson, appellant.

*Kramer, Night & Wales,* attorneys (*Donald D. Kramer* of counsel), for Fred E. Laman, appellant.

*Robert O. Brink, District Attorney* (*Samuel W. Bernstein, Assistant District Attorney* of counsel), for respondent.

HILL, P. J. Appellants Fred E. Laman and Claude H. Henderson, jointly indicted with two other defendants, were convicted of conspiracy to commit the crime of bribery and receiving unlawful fees, in violation of sections 372, 580 and 1826 of the Penal Law. The indictment contained ninety-six counts. The jury acquitted both defendants on the first count, but convicted them on the second count wherein they were charged with conspiracy. The remaining counts were for bribery of an official and the taking of unlawful fees. Fourteen counts against Henderson and twenty counts against Laman were dismissed by the court for lack of proof. Laman was an inspector of weights and measures for the New York State Department of Agriculture, assigned to work in several counties of which Broome was one. Claude H. Henderson was the sealer of weights and measures of the City of Binghamton, Broome County, New York. The gravamen of the charges is that on various occasions these officials, in consideration of payments of money, permitted coal truckers to deliver short weights to customers. Each transaction is represented by two counts, typified by the following:

### "Fifth Count

" Officer accepting bribe. Claude H. Henderson as principal charged with receiving Ten Dollars ($10.00) from Bernard Barry on or about the 1st day of March, 1945. Fred E. Laman, Bernard Barry and Steve Martin charged with aiding and abetting.

### "Sixth Count

" Crime of taking unlawful fees. Charges Claude H. Henderson as principal with receiving an unlawful fee in the amount of Ten Dollars ($10.00) from Bernard Barry on or about the 1st day of March, 1945, and charges Fred E. Laman, Bernard Barry and Steve Martin with aiding and abetting."

Others of the counts charged appellant Fred E. Laman as principal, those aiding and abetting being named as Claude H. Henderson, Bernard Barry and Steve Martin. Barry and Martin, coal truckers and dealers, each gave evidence against their codefendants.

Barry, a native of Luzerne, Pennsylvania, had trucked coal to Binghamton and vicinity from 1933. Generally speaking, the coal would be purchased at one of the smaller mines, drawn to Binghamton and delivered direct from the truck, although for a time this witness maintained a "coal yard" in Binghamton where all or part of a truck load might be unloaded when his orders were for less than a complete load. He states:

"Early in 1944 prices went up. We were buying coal at lower prices than the big dealers, but they kept jumping us truckers, so by fall, they were pretty high on the price. We had two or three raises in between. * * * The small independents raised when they felt like it, because they were still selling under the big dealers — big prices. The first line collieries didn't go up until the first of April, then again in September. The little collieries jumped when they pleased, because they were still under price.

"Q. Some time after this April raise, did you make some arrangements with your drivers? A. Yes, they were kicking because they were losing too much time with tires and stuff. I told them on account of the coal raise, I couldn't give them no price. We decided to make half a ton on a load of coal.

"Q. What do you mean by that? A. Half a ton more than what we bought. If we bought 7½ tons, we took the over weight and sold it for eight. * * *

"Q. Did you instruct your drivers accordingly? Did you tell them to do that? A. Yes, then I paid them by the week.

"Q. Some time prior to July 25, 1944, was your attention called to the fact that some short weight complaints had been made against your drivers to the city sealer of weights and measures of the City of Binghamton? A. I don't know whether they was made to the city sealer, but I know different truckers was coming in and they says 'there's rumors flying there was a little short weight going on,' previous to that arrangement I made."

Shelley, a coal trucker, offered to take Barry to Binghamton in connection with the complaints, and they went to the place of business of the codefendant Steve Martin, and there met appellant Henderson.

"Q. What happened after Steven Martin introduced you to the defendant Henderson? A. Henderson sat down for a while and I told him I wanted to see him, so Henderson and I went across the street in his car. I went over there with him and sat down. Henderson says, 'Sabol made that complaint good.' I told him I wanted to see him about that complaint. Sabol put the coal in.

" Q. Was there any conversation as to what complaint it was?  A. He told me that there was a complaint on 158 West End Avenue.  He said it was 2½ tons short.  I told him I couldn't understand the 2½ tons short, but I told him I couldn't fire any drivers right now because they are all in their names and I was having a little trouble, so I gave Mr. Henderson — I put $20 on the seat for Henderson.  I told him, ' thanks for not causing me any trouble on that complaint.' "

Barry's testimony is studded with gifts to Henderson somewhat comparable with the detail given.

The association with appellant Laman began when Barry's representative in Binghamton called him and he met Laman at a gas station where the coal was weighed.  His recital is:

" Mr. Laman had a pad in his pocket.  He reached in and took it out and he says, ' I see Henderson has some complaints against you.'  He had Henderson's record.  ' How come these complaints,' he says; ' you never had any complaints when you was in business over on Hawley Street.'  I told him I was having a little difficulty because the trucks was in their names [the drivers].  I said, ' I can't tend to the coal business the way I should and be in this business, too.  I'm going to sell the beer garden and go back in the coal business.'  As I was getting ready to go, Laman asked me for a loan of $20.

" Q. Did you give it to him?  A. I gave him $20.

" Q. Did you ever get it back?  A. No sir."  At a later date Laman came to Barry's beer garden saying he wished to see Mr. Hawk.

" Q. Who was Mr. Hawk?  A. The assistant cashier at the Luzerne National Bank, and ne had two trucks that was operated by Mr. Creagh from Endicott.  There was a complaint that Mr. Laman wanted to see Mr. Hawk about."

Later he recites a conference in Pennsylvania:

" A. Mr. Hawk came in and Ed Creagh says, ' Mr. Laman is down here, we ought to give him a little something,' so he talked to Hawk and Hawk says, ' I'm satisfied; who's going to take the collection up and give it to Mr. Laman?'  Ed Creagh says, ' Let Hawk take it up,' so I gave $10, Ed Creagh gave $10, and Hawk himself gave $10   *   *   *

" Q. You did see Mr. Laman and Mr. Hawk talking privately then after you had put in $10, given Mr. Hawk your $10?  A. Yes.

" Q. You saw Creagh give Mr. Hawk $10?  A. Yes.

" Q. And Mr. Hawk took out $10 and added to it?   A. I seen $30 in Mr. Hawk's hand."

Hawk, when sworn as a witness testified that he gave Laman $30 at the time.

Steve Martin resided in Binghamton and had been in the coal business about ten years. He was acquainted with the appellant Laman and knew him when he was city sealer of weights and measures. He also knew Henderson and knew of his appointment as city sealer about the middle of March, 1944. While delivering a load of coal, he was stopped by Laman and Henderson shortly after the latter's appointment. His testimony is along the same line as Barry's, with whom he was acquainted. After a call at Barry's saloon in Pennsylvania, he delivered to Henderson three bottles of whiskey as a gift from the former. He testifies to two occasions in December, 1944, when he gave $10 to Henderson. Frequently Henderson would tell Martin of short weight complaints. Some were adjusted by additional deliveries. He was asked this question:

" Q. Were you taken before Commissioner of Public Safety Behan in connection with any of those? A. No, sir.

" Q. Or were you arrested or prosecuted in connection with any of these short weights? A. No, sir.

" Q. During the years 1944, 1945 and down to March 1, 1946, were you ever arrested or taken before the Commissioner for short weight violations, or any violations of the Agriculture and Markets Law? A. No sir.

" Q. Were you selling coal short weight in 1945? A. Yes I did.

" Q. Were you selling short weight coal in 1945 more extensively than you were in 1944? A. We sold very little short weight in 1944. "

He tells of paying $5 on several occasions to Laman.

An incident relied upon by the People as corroborative of the coconspirators as against Henderson concerns a complaint made by Joseph T. Mack that he was three tons short on a purchase from Barry. He talked with the clerk in the Barry coal office, and the driver told the clerk to call Henderson and notify him of the Mack complaint. The latter had communicated only with Barry's office, but Henderson called at his home and arranged to pay $39.75 refund on account of the three-ton shortage. There is no proof that Mack or the clerk were involved in the criminal conspiracy.

Rufus Kelley, a resident of Binghamton, purchased five tons of coal from Martin. From the appearance of the bin he determined that there was a shortage which he called to Mr. Henderson's attention, who came to his residence with a deputy

sealer of weights, Ballard, who ascertained there was a shortage of over a ton. This amount was then delivered by Martin, but there was no prosecution and no report of the incident.

Laman admitted to the officer who arrested him that he had been in Luzerne on the occasion of the recited conversation with banker Hawk. He denied taking money, but said he stayed all night at Mr. Barry's place after meeting Messrs. Hawk, Creagh and Barry.

For corroboration both as to Henderson and Laman, the People rely upon their association with the coconspirators and criminals. The latter were all truckers and vendors of trucked coal, and Henderson's work as sealer of weights was with this class of persons, and it was necessary that he should associate with and know them. Laman occupied a more supervisory position, his field covering more than ten counties wherein he directed and advised the local sealers as to their duties and work. Under certain conditions, association with the criminals and coconspirators is corroborative of their statements. As to Henderson, his attendance at a picnic and other social affairs with the truckers together with the Mack and Kelley transactions, furnishes corroboration that tends to connect him with the crime charged.

As against the defendant Laman the People have introduced in evidence two inspection slips signed by him taken from the records which he turned over to the State authorities. Under the explanation contained in the evidence, it is difficult to see how these slips are corroborative of the charge that he was receiving money to overlook short weights. Each of the convicted defendants denied any participation when examined at length by detective Sullivan. The failure to prosecute violations is not as convincing against the inspector, with the large field to cover, as against the local sealer Henderson. Each of the truckers, whether indicted or not, who gave testimony of payments to either of these defendants, spoke as one who was engaged in committing the crime of bribery, and each participated in the conspiracy.

Evidence offered in corroboration should tend to show the material facts necessary to establish the commission of the crime and the identity of the persons committing it. In certain instances presence at the place of the crime or association with the admitted criminals are corroborative. (*People* v. *Deitsch,* 237 N. Y. 300; *People* v. *Kress,* 284 N. Y. 452; *People* v. *Mullens,* 292 N. Y. 408.) Laman's association with the admitted criminals was in the line of his duty as an inspector, and the evidence

thereof is not corroborative. The connection of the weight bills with the taking of a bribe is not clear. These bills were not connected with a shortage of weight, one of them in fact dealt with excess weight which the purchaser received. The conviction of the defendant Laman should be reversed on the law and facts and the indictment dismissed.

Henderson's adjustment of short weight complaints in connection with Mack and Kelley, his failure to prosecute offenders of long standing, furnishes some corroboration of the testimony given by the conspiring criminals, and his conviction should be affirmed.

In the Laman case: FOSTER and RUSSELL, JJ., concur; HEFFERNAN and DEYO, JJ., dissent and vote to affirm the conviction against defendant, Laman.

Judgment of conviction of the defendant Laman reversed, on the law and facts, and the indictment dismissed, on the law.

In the Henderson case: HEFFERNAN, FOSTER, RUSSELL and DEYO, JJ., concur.

Judgment of conviction of the defendant Henderson affirmed.