John J. Walsh, J.
These two motions, made by the individual defendants on separate indictments, involve the same fundamental question.
The indictment against the defendant, Bill Philipson, charges one count of criminally selling a dangerous drug in the second degree, in violation of section 220.35 of the Penal Law, in that on November 2, 1968 at the City of Utica, he unlawfully sold to one G. P. Thomas, a narcotic drug, to wit: marihuana; and a second count, that he unlawfully possessed the same drug, with intent to sell.
The indictment against the defendant, Terrill Hastings, charges two counts of possession of a dangerous drug in the third degree and three counts of criminally selling a dangerous drug in the third degree in that on or about the 3d day of December, 1968, he possessed and knowingly sold to G. P. Thomas and/or M. E. Hamlin an amphetamine and/or lysergic acid diethylamide.
The defendants seek to inspect the Grand Jury minutes and to dismiss the indictment in each case on the ground that, if said sale was in fact made, it was actively induced or encouraged by the undercover agent himself or by a person acting in co-operation with him in an attempt to obtain evidence against the defendant for the purpose of criminal prosecution.
It is a matter of general knowledge in the community and conceded by the People that G. P. Thomas and M. E. Hamlin, the persons to whom the defendants are charged with having sold the dangerous drugs, were in fact law enforcement officers working undercover to obtain evidence of violation of the law in respect of dangerous drugs.
The defendants through counsel express the belief “ that an inspection of the Grand Jury minutes would conclusively establish that the method used to obtain the evidence presented to the Grand Jury was such that the offense would be committed by the defendant who was not otherwise disposed to commit it.”
The District Attorney, on the other hand, answers that the question of entrapment is ‘ ‘ properly raised by the defense at the time of trial, if at all.”
*422 The doctrine of entrapment as a defense to a criminal charge is unknown to Anglo-Saxon law. Originally created and developed by judicial opinion during the present century, it finds its genesis in the proposition that there is sufficient crime to be punished without the necessity of adopting a policy whereby crime is to be artificially propagated. It offends justice to first induce an innocent person to commit a crime which he was not inclined to do and then punish him for allowing himself to be so enticed.
On the other hand, the courts have recognized that there are certain types of criminal activity which by their very nature are committed secretly. Gambling, prostitution and the sale of narcotics are examples of such offenses. Such offenses are extremely difficult to detect and almost impossible to punish without some degree of active participation and inducement by a government official. (See People v. Williams, 38 Misc 2d 80.)
There are two general situations in which the doctrine of entrapment has been employed. In the first, proof of entrapping methods negates an essential element of the crime itself. For example, in a larceny prosecution, where the evidence shows that the owner of the property actively participated in causing the property to be delivered to or taken by the defendant, he is found to have consented to the property being taken. Since lack of consent of the owner is an essential element of the crime charged, entrapment is successful as a defense. (People v. Frank, 176 Misc. 416.)
In the second type of situation, the defense of entrapment is asserted where it is alleged that a defendant has been induced to commit the crime by an undercover police officer or an informer working in co-operation with the police, but none of the essential elements of the crime is negated thereby.
This situation first presented itself in the case of Sorrells v. United States (287 U. S. 435 [1932]). In that ease, the defendant was repeatedly requested to sell some liquor to the arresting agent. The trial court refused to sustain a plea of entrapment and ruled as a matter of law that the defense was unavailable. The Supreme Court of the United States reversed the conviction and directed the District Court to dismiss the indictment.
Since the essential elements of the crime itself had been established, the court was required to develop a theory which would justify a reversal. It first attempted to define the limits of entrapment. “It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch *423 those engaged in criminal enterprise * * *. A different question is presented when the official design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.”
Then, the court held that there was an implied legislative intent that the statute would not apply to a person who without a predisposition to violate the law was entrapped by persuasion into doing something he would not otherwise have done.
After deciding that the .defense was valid as a matter of law in that case, the majority then went on to say that basically the defense was one for the consideration of a jury. (See, also, Sherman v. United States, 356 U. S. 369.)
The revised Penal Law of New York now provides for an affirmative defense of entrapment (§ 40.05) with the burden placed on the defendant to establish the defense by a preponderance of the evidence (§ 25.00).
It seems clear that entrapment in New York State may not be determined pretrial and this same result would follow even in the Federal jurisdiction.
‘ ‘ Basically then, entrapment must be conceded to be a jury question subject only to the ordinary possibilities of judge determination in cases of extremely one-sided evidence. The primary arguments offered for jury determination seem to be three in number. First, that the entrapment issues involve close questions of fact, turning on credibility of the defendant or of the alleged entrapper, and such weighing of credibility is traditionally considered to be within the jury’s peculiar competence. Second, that the subjective way in which entrapment is traditionally defined involves determination of the defendant’s motivation and intent which require the collective objectivity of a jury, resulting in the composite judgment of a reasonable man as to what those motives were. Third, that the juries in entrapment cases express community standards, acquitting whenever police practices shook the common conscience, regardless of the legal technicalities involved.” (Entrapment as a Defense to Criminal Responsibility: Its History, Theory and Application. 1 Univ. of San Francisco L. Rev., 243, 270.)
The application of the New York statute on the defense of entrapment is not without its difficulties. (See New York Statutory Defense of Entrapment: The Need for a Judicial Gloss. 13 Catholic Lawyer, 242 et seq.)
The chief argument against the jury determination of entrapment is that the defendant must in effect concede his technical guilt and take the witness stand in his own defense. In United *424 States ex rel. Hall v. Illinois (329 F. 2d 354, cert. den. 379 U. S. 891) the court held that the entrapment defense was not a requirement of due process.
In a concurring opinion in Sherman v. United States (356 U. S. 369, supra) there was pointed out an additional factor. “ The danger of prejudice in such a situation * * * is evident. The defendant must either forego the claim of entrapment or run the substantial risk that * * * the jury will allow a criminal record or bad reputation to weigh in its determination of guilt ” (p. 382).
While there is much to be said in favor of a pretrial hearing such as is presently employed in the case of confessions, police lineups and searches and seizures of evidence, in the absence of statute or judicial authority this court does not feel inclined to" experimentation in this field.
As a matter of fact the court has examined the G-rand July minutes and finds therein as might be expected, no information which would be of any assistance to the defendants in connection with the defense of entrapment.
Motions to inspect the Grand Jury minutes are denied.