John J. Walsh, J.
The indictment herein was found on the 11th day of February, 1969 charging the defendants with a violation of section 200.10 of the Penal Law. It is alleged in said indictment that the defendants, while acting together and in concert and each being the accomplice of the other, did solicit and agree to accept from persons having an interest in the firm of Carucci Bros. Sanitation Service, a benefit, to wit, money, upon an agreement or understanding that in connection with a garbage collection contract, the action, decision or exercise of discretion of the defendant Nassar, as a public servant, to wit, Corporation Counsel of the City of Utica and a member of the Board of Contract and Supply of said City of Utica, would thereby be influenced.
Section 200.10 of the Penal Law provides: “ A public servant is guilty of bribe receiving when he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that his vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.”
*1035 The defendants by identical motions, seek an inspection of the Grand Jury minutes.
The supporting affidavits allege, upon information and belief, that certain recorded telephone conversations allegedly had between the defendants and one Angelo Carucci were introduced either in recorded form or in transcript form as evidence presented to the Grand Jury, upon which evidence, in part, said indictment was found. They further allege that said telephone conversations were recorded without first obtaining an eavesdropping warrant, pursuant to the statutory requirements set forth in sections 814 to 825 inclusive of the Code of Criminal Procedure of the State of New York and without the knowledge and/or consent of either of the defendants and that by reason thereof, said recorded telephone conversations or transcripts thereof, were illegal and incompetent evidence and violated defendants’ constitutional rights.
As a second ground for inspection, the defendants allege upon information and belief, that there was uncontroverted evidence before the said Grand Jury to the effect, assuming without conceding that any crime had been contemplated, that there was a complete and voluntary renunciation and abandonment of any crime or any attempt to commit a crime within the purview of section 40.10 of the Penal Law, and by reason of this alleged evidence, sufficient grounds for a dismissal of the indictment upon the Grand Jury minutes is presented.
The District Attorney on the argument of this motion conceded that the conversation was recorded without first obtaining a court order but argues that such order was not necessary because it was recorded with the consent of one of the parties to the conversation.
He further argues that renunciation is no defense where it occurs after the alleged crime is complete and that in any event, renunciation under the law is an affirmative defense to be raised upon the trial and that a Grand Jury is not bound to accept evidence of renunciation even if uncontroverted.
Since several matters of first impression appear to be involved, the court will consider them separately.
Eavesdropping Evidence.
The Supreme Court of the United States has decided clearly that the Fourth Amendment of the Federal Constitution protects a person’s private conversations as well as his private premises. (Katz v. United States, 389 U. S. 347 [1967].) Since *1036 Mapp v. Ohio (367 U. S. 643, 655) ruled that “ all evidence obtained by searches and seizures in violation of the Constitution, is by the same authority, inadmissible in a state court ”, the defendants here are entitled to challenge the recording of such conversations. The first question to be decided is whether a motion to inspect the minutes of the Grand Jury is the proper vehicle to raise the issue.
The courts have taken the position generally that an inspection of the Grand Jury minutes on the ground that evidence obtained as a result of a wiretapping or an illegal search and seizure was presented to the Grand Jury should be denied. (People v. Russo, 25 Misc 2d 206; People v. Naples, 26 Misc 2d 1050; People v. Rodriguez, 28 Misc 2d 736; People v. Lesandro, 31 Misc 2d 502; People v. Wagman, 31 Misc 2d 505; People v. Mitchell, 51 Misc 2d 82; People v. Horton, 53 Misc 2d 277.) The reasons for such a denial were given by Justice Marks in People v. Atkins (221 N. Y. S. 2d 780, 782): “It cannot always be determined from an inspection of the grand jury minutes whether or not the evidence presented was lawfully obtained and therefore, a motion to inspect grand jury minutes does not properly serve to raise this issue.”
In 1964, the Appellate Division of the First Department in People v. Gentile (20 A D 2d 412, 413) finalized the appropriate procedure as follows: “ A motion to inspect the Grand Jury minutes or, alternatively, to dismiss the indictment, as occurred here, is not the appropriate vehicle to test the constitutionality of a search and seizure, or to determine if the Fourth Amendment to the Constitution of the United States has been violated (see Code Crim. Pro., §§ 813-c, 813-d, 813-e, 249; People v. Atkins, 221 N. Y. S. 2d 780; cf. Code Crim. Pro., §§ 313, 668-672; People v. Gonzales, 31 Misc 2d 486). A hearing should be held on the issues and the parties afforded the opportunity to support their respective contentions. The legality of the search and seizure as to law and fact should then be determined by the court. (Steele v. United States, 267 U. S. 505).”
The motion to inspect the Grand Jury minutes on this ground is denied without prejudice and with leave to the defendants to make appropriate motions for the relief sought, including the motion to suppress evidence. (People v. Atkins, supra.)
Other Belief Sought.
In the moving papers, the defendants seek “ such other and further relief as to the court may seem just and proper.”
In the case of People v. Morhouse (21 N Y 2d 66, 79 [1967]) on an appeal from a judgment of conviction for bribery (former *1037 Penal Law, § 378) the Court of Appeals remanded the case to the trial court for a hearing, saying: “ It would seem sufficient to fully protect defendant’s Fourth and Sixth Amendment rights and his right to due process that we simply remand this case to the Supreme Court, New York County, for a full hearing as to any claimed violations of defendant’s rights through the eavesdrops which he has standing to challenge.”
In People v. Broffman (30 A D 2d 653) the Appellate Division, First Department reversed a conviction and directed a new trial in a case involving a telephone tap. The court said: “ At the very least there should be a preliminary hearing on the issue ” and indicated that under the doctrine of People v. Rosario (9 N Y 2d 286) defense counsel should have been permitted to determine what use, if any, they would make of the transcriptions of the tapped telephone conversations and this matter should not be decided by the court alone or by the prosecution.
In a similar case, People v. Miller (28 A D 2d 1205, 1206) directed that a hearing be held and that ‘ ‘ Prior to the hearing all transcriptions and recordings obtained as a result of the respective orders [for taps] shall be made available to appellant.”
Finally, the United States Supreme Court on March 10, 1969 in Alderman v. United States (394 U. S. 165) ordered a postconviction hearing (1) on the question of whether with respect to any petitioner there was electronic surveillance which violated his Fourth Amendment rights, and (2) if there was such surveillance with respect to any petitioner, on the nature and relevance to his conviction of any conversations which may have been overheard through that surveillance. The court then said (p. 183): “With this task ahead of them, and if the hearings are to be more than a formality and petitioners not left entirely to reliance on government testimony, there should be turned over to them the records of those overheard conversations which the Government was not entitled to use in building its case against them.”
The defendants then are entitled to discover and inspect the original tapes, and to have copies of all transcriptions made therefrom and to compare said transcriptions with the original tapes.
Renunciation and Abandonment.
The defendants contend that an inspection of the Grand Jury minutes will disclose undisputed evidence that assuming any crime had been contemplated, that there was a renunciation *1038 and abandonment and thus a complete defense to the crime charged within the purview of section 40.10 of the Penal Law (formerly § 35.45).
That section, as renumbered, provides for a statutory defense of ‘ ‘ renunciation ” as an affirmative defense to be raised at the trial, at which time the defendant has the burden of establishing such defense by a preponderance of the evidence (§ 25.00).
This statutory defense attempts to clarify the old concept of “ abandonment of a crime ” which appeared occasionally in the case law of this and other States.
The law of abandonment or renunciation as it is now called as it existed under the decisional law of this State was well defined by Chief Judge Hiscock in People v. Nichols (230 N. Y. 221, 229-230): ‘1 Whatever may be the other requirements of an effective abandonment of a criminal enterprise it is certain both as a matter of law and of common sense that there must be some appreciable interval between the alleged abandonment and the act from responsibility for which escape is sought. It must be possible for a jury to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. The process of detachment must be such as to show not only a determination upon the part of the accused to go no farther but also such as to give his co-conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act in question is committed. A conspirator cannot escape responsibility for an act which is the natural result of a criminal scheme which he has helped to devise and carry forward because as the result either of fear or even of a better motive he concludes to run away at the very instant when the act in question is about to be committed and when the transaction which immediately begets it has actually been commenced, as in this case. While it may make no difference whether fear or actual repentance is the moving cause, one or the other must lead to an actual and effective retirement before the act in question has become so imminent that its avoidance is practically out of the question.”
As recently as People v. Lieberman (3 N Y 2d 649, 652) the Court of Appeals stated that the law was clear that the defense of abandonment was ineffectual where the criminal enterprise is complete and the defendant did not wholly and effectively detach himself in advance of its completion.
*1039 The statutory defense of renunciation written into the new Penal Law applies in the main to anticipatory offenses (criminal solicitation, conspiracy, attempt to commit a crime, and criminal facilitation), anticipatory in the sense that there exists an “ object ” or substantive crime yet to be committed, and in addition to cases of consummated crime in which the culpability of a person rests upon some principle of accessorial liability.
The defense in the statute is an “affirmative” one. “A precise yet comprehensive definition of the term ‘ affirmative defense ’ is nearly impossible to formulate. In its broad sense, however, it refers to a means of vindication which is collateral to, and distinct from the prosecution’s case. Generally, an affirmative defense is based upon information either peculiar to the defendant’s knowledge or more readily available to him. In such a defense, the defendant is called upon to establish a positive fact, rather than merely negate one or more of the allegations against him. The defense is basically one of explanation and not one of denial.” (Affirmative Defenses Under New York’s New Penal Law, Syracuse L. Rev., Fall 1967, pp. 44-45.)
Basically, renunciation is a trial jury question and not one of law. It involves close questions of fact, turning on credibility of witnesses, and such weighing of credibility is traditionally considered to be within the jury’s peculiar competence. Further, it involves determination of a person’s motivation and intent which require the collective objectivity of a jury, resulting in the composite judgment of a reasonable man as to what those motives were. These are beyond a judgment as a matter of law and remain positive facts for a jury. While the Grand Jury could consider renunciation, it was not bound to do so as a matter of law.
Matters relating, to possible defenses are not properly the basis for an application for an inspection of Grand Jury testimony. These are issues which should be raised at the trial. (People v. McCann, 166 Misc. 269; People v. Banks, 27 Misc 2d 557; People v. Zara, 44 Misc 2d 698; People v. Alvares, N. Y. L. J., March 5, 1963, p. 17, col. 5 [self-defense, accident, intoxication as affecting intent]; People v. Philipson, 59 Misc 2d 420.) Although the defendants have not shown grounds upon which they should be accorded the privilege of examining the Grand Jury minutes, this court indicated on the argument of the motion that it would itself examine the Grand Jury minutes. “ On such a motion the judge is authorized to read *1040 the minutes of the Grand Jury ” (People v. Howell, 3 N Y 2d 672, 675).
The transcript of such testimony has not yet been submitted to the court for its examination. When delivered, the court will then make its determination. In the interim, the defendants are entitled to the relief indicated in this memorandum in order to make any appropriate pretrial motions.