Hancock, Jr., J.
(dissenting in People v Alvino; dissenting in part in People v Hernandez). A public official is charged with receiving a bribe in exchange for performing an illicit act. His defense is a denial. He raises no issue concerning mistaken or innocent receipt of the money or lack of intent. He swears that he never received any money and that the charge against him is based on manufactured evidence. May the People, for the purpose of establishing defendant’s guilt of the crime, attempt to show, as part of their direct case, that on 15 prior occasions he did exactly the same thing? The majority says that they may. Therein lies the clear-cut issue which divides this court.
If there is one principle that is by now firmly embedded in the law it is this: that a defendant cannot be convicted of a crime because he committed the same crime before. There is no better statement of the rule than that set forth in People v Katz (209 NY 311, 328), a case relied on by the majority: "Tibe general rule is rooted in the principle that a man may not be convicted of one crime simply because he may be shown guilty of another when there is no connection between the two. Simple proof showing that A. shot B. at one time and place *249 throws no light upon the charge that A. poisoned C. at another time and place. In either of these cases guilty knowledge or intent is inferable from the nature and surroundings of each act, and each must be judged on its own circumstances”. Nor is there a clearer illustration of circumstances, where, unlike the case here, intent was placed in issue and prior crimes evidence was properly admitted than People v Katz (supra). There, defendant and several others were charged with participating in a conspiracy to commit larceny. Defendant claimed to have been drawn into the scheme without any criminal knowledge or purpose on his part. In holding prior crimes evidence admissible to establish defendant’s guilty intent, we distinguished the case from the usual trial on a charge of larceny, where proof of prior larcenies would not be admitted as bearing on defendant’s guilt, stating: "Although confessedly a participant in certain phases of the scheme, he asked the jury to believe that his connection with it was free from criminality, and his story was such that if the jury had found for him the verdict could not have been questioned for lack of evidence to support it. His narration of the affair, while strongly indicative of guilt, was not incompatible with innocence, and, therefore, the real issue was whether he was a guiltless scapegoat or a guilty conspirator. That is exactly the typical case in which evidence of other similar offenses may be proven” (209 NY, at 329, supra [emphasis added]).
Here, because defendant denied the transaction and expressly disclaimed any defense of mistake or innocent intent, the admission of the evidence of previous similar transactions to prove his guilt offends the general rule which has for centuries been established in Anglo-American law. Eighty-six years ago in the famous Molineux decision we summarized it: "The general rule of evidence applicable to criminal trials is that the state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for a separate punishment, or as aiding the proofs that he is guilty of the crime charged. (1 Bishop’s New Grim. Pro. sec. 1120.) This rule, so universally recognized and so firmly established in all English-speaking lands, is rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of *250 a crime shall be protected by the presumption of innocence until he has been proven guilty beyond a reasonable doubt. This rule, and the reasons upon which it rests, are so familiar to every student of our law that they need be referred to for no other purpose than to point out the exceptions thereto.” (168 NY 264, 291.)
The Molineux rule is founded on a principle "not of logic, but of policy”; for although propensity for criminal behavior may cogently be argued, the law "is not blind to the peril to the innocent if character is accepted as probative of crime” (People v Zackowitz, 254 NY 192, 198 [Cardozo, Ch. J.]). The so-called Molineux rule recognizes that the " 'natural and inevitable tendency of the tribunal — whether judge or jury — is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge’ ” (id., at 198, quoting 1 Wigmore, Evidence § 194). We have consistently given effect to this principle since our earliest decisions (see, e.g., Coleman v People, 55 NY 81, 91-92; People v McLaughlin, 150 NY 365, 391-392; People v Grutz, 212 NY 72, 76-79; People v Richardson, 222 NY 103, 110-111; People v McKinney, 24 NY2d 180, 185; People v Crandall, 67 NY2d 111, 119).
Over defendant’s objections, although both mistake or lack of intent were expressly disclaimed by defendant, the People were permitted to present testimony that on 15 prior occasions defendant did exactly what he denied doing here — accept money in return for issuing a false certificate. Admission of that evidence virtually foreclosed any possibility that the jury could believe that defendant was innocent on the alleged sixteenth occasion for which he was charged. The case is remarkably like People v Sharp (107 NY 427), a decision quoted in Molineux, where we excluded proof of prior crimes evidence in a bribery case. There, defendant, like defendant here, did not claim that he gave the money innocently but rather that he did not give it at all. In holding proof of prior briberies inadmissible we said: "But here the very thing in dispute was whether he gave the money, and that upon a former and different occasion he had offered money with a guilty purpose to another person, could not fairly be held as relevant to that question.” (107 NY, at 460-461, supra [emphasis added].) A text writer would be hard-pressed to find more compelling examples of cases calling for the application of the *251 principle underlying the Molineux exclusionary rule than People v Sharp (supra) and the case at bar.
I
Defendant Alvino was accused of accepting a cash bribe for issuing a false driver’s license. The case was presented and tried as a single transaction involving two interrelated and virtually simultaneous criminal acts. The sole question for the jury was whether the transaction actually occurred. The People presented evidence that it did; defendant swore that it did not. He claimed that he was being "framed” through false testimony given by a criminal cooperating with the police.
The People established a prima facie case on both the bribe-receiving and false certificate charges through tape recordings and the direct evidence of two eyewitnesses. Defendant, a cashier employed by the State Department of Motor Vehicles, regularly processed, approved and issued various permits and licenses including, specifically, amended driver’s licenses — a type of document for which no license fee is charged. The chief witness for the prosecution was one Mario Falto who, by his own admission, had worked for approximately 10 years prior to his arrest in illegally obtaining various licenses and other documents by bribing Department of Motor Vehicles officials. On July 19, 1982, upon his arrest for such conduct, Falto agreed to cooperate with the District Attorney by working undercover in return for a promise that his assistance would be made known to the court at the time of his sentencing.
Falto testified that, on September 10, 1982, he gave defendant $100 in cash in return for defendant’s processing and issuing an amended driver’s license which contained false information inserted by Falto himself on the appropriate application form. The other eyewitness, an investigator for the District Attorney’s office who was standing nearby, swore that he saw defendant accept five bills in United States currency from Falto. The People also introduced tape recordings of conversations between Falto and defendant, including one at the time of the alleged transaction when the $100 was passed[1] *252 and another at a subsequent time when defendant assertedly admitted having received the money.[2] Additionally, over defendant’s objections, the People were permitted as part of their case-in-chief, to present Falto’s testimony concerning 15 prior transactions, never charged as crimes against defendant, in which defendant allegedly issued similar false documents to Falto, or to a "partner” of his, in return for money.
At the Molineux hearing, the prosecutor had argued that such evidence was admissible "either as relevant to the defendant’s intent or relevant to the issue of absence of mistake”. Defense counsel opposed its receipt on the ground that the prejudice would far outweigh its probative value, and because defendant was specifically disclaiming any defense of mistake or lack of intent and, instead, simply denying receipt of the bribe and challenging the veracity of Falto’s story. Consistent with this position, defendant’s case at trial was that Falto’s testimony about the charged transaction was a complete and self-serving fabrication. Defendant’s own testimony was not that he had accepted Falto’s money by mistake or with innocent intent, but that he never accepted money at all.[3] Nevertheless, the court admitted Falto’s testimony about the 15 uncharged transactions on the ground that it would help the jury to "discern the defendant’s state of mind with respect *253 to the transaction” for which he was charged and, thereby, to determine whether defendant’s acceptance of the money was "an innocent or mistaken receipt”.
II
Evidence of uncharged crimes is admissible only if offered for some purpose other than to raise an inference that a defendant has a criminal propensity (see, People v Molineux, supra, at 291-294; see also, People v Lewis, 69 NY2d 321, 325; People v Fiore, 34 NY2d 81, 84; People v Schwartzman, 24 NY2d 241, 247, cert denied 396 US 846; People v McKinney, supra, at 184; Richardson, Evidence § 170 [Prince 10th ed]). The purpose of the rule is simply to prevent the jury from drawing the impermissible inference "that one who has sinned before has sinned again and is [therefore] guilty of the crime charged” (People v Carmack, 52 AD2d 264, 266, affd 44 NY2d 706).
As the majority agrees, whether evidence of prior crimes may be admitted or must be barred under the Molineux rule is a question of law, not discretion. (See, People v Fiore supra, at 84; People v Grutz, supra, at 77.) Only where the evidence of prior crimes is probative of a legally relevant and material issue on the instant charge, and for that reason admissible as an exception to the general rule, is there room for the exercise of discretion. (See, People v Ventimiglia, 52 NY2d 350, 359; People v Allweiss, 48 NY2d 40, 47.) Where, on the other hand, the evidence proves only criminal propensity and serves no other function in demonstrating defendant’s guilt of the crime charged, there is no legitimate basis for its admission. No degree of care, in assessing its value and possible prejudice and in giving cautionary instructions, can render it otherwise (see, People v Zackowitz, supra, at 197-198).
In my view, it was error to admit the evidence of uncharged crimes in this case. There was no basis for admitting it on the question of mistake. Of course, such evidence is sometimes admissible to dispel the possibility of mistake (People v Henson, 33 NY2d 63, 72; People v Molineux, supra, at 300-305), but only where there is a "claim of accident or mistake on defendant’s part to be negated” (People v Crandall, 67 NY2d 111, 119, supra; see also, People v Henson, supra, at 71). This exception to the general Molineux rule has no application where a defendant, instead of conceding the actions alleged and seeking to excuse them as an innocent mistake, flatly *254 denies ever doing them. The record clearly demonstrates that that is not the situation here.
Defendant never pleaded mistake. The prosecutor believed defendant might raise such a defense by claiming that he did not understand what was happening. In fact, defendant never made such a claim. Indeed, he disavowed it on the record. In the colloquy during the Molineux hearing, the prosecutor, arguing for admission of the evidence, stated to the court: "The defendant as I understand it is likely to claim that he was simply rubber stamping whatever the examiner had approved, that he didn’t know why he was being paid, what he was being paid for or what was expected of him in return.” (Emphasis added.)
Defense counsel, however, in opposing receipt of the evidence responded quite plainly: "Your Honor, I can say unequivocally my defense in this case has nothing to do with mistake. It is my position that the District Attorney’s office is trying to convict the defendant of something which they could not by their own admission convict him of * * * The jury is only going to be given one crime. When they hear all the prejudicial evidence there is no doubt in my mind that they are going to convict Mr. Alvino regardless of the lack of proof of the instant indictment * * * Our defense is not lack of intent per se. Our defense is not mistake. Our defense is that [defendant] was framed by [Falto] in this case and it is clearly and simply that. ”[4]
Moreover, defendant’s position throughout the trial was that he never accepted an illicit payment from Falto or anyone else — not that he had done so by innocent mistake. For him to have claimed that he had taken the $100 payment, *255 but had done so by mistake, would have been entirely incompatible with his defense that the alleged transaction never occurred, that Falto was lying. Even assuming that it could ever make sense to claim that one misunderstood his own act of accepting a cash payment, such a contention would have been particularly farfetched here where defendant was accused of pocketing five $20 bills for issuing an amended license to which an applicant is entitled without charge.
Nor was there any basis to admit the evidence under the limited "intent” exception. That exception applies "only where the acts involved in the crimes charged are equivocal so that intention is not easily inferred from the acts alone * * * Tn such cases it is recognized that "proof of intent is often unobtainable except by evidence of successive repetitions of the act.” ’ ” (People v McKinney, supra, at 184-185, quoting People v Schwartzman, supra, at 248, and People v Molineux, supra, at 298.) So, for example, in prosecutions for the passing of a single counterfeit bill, the negotiation of a forged check, or the possession or receipt of stolen property, proof of the act alone permits no inference of criminal intent or knowledge and, therefore, evidence of similar acts committed on other occasions may be admissible under the intent exception to the general rule (see, Richardson, Evidence §§ 172-176 [Prince 10th ed]).[5] By sharp contrast in this case, there is nothing equivocal about defendant’s alleged act of accepting money from Falto for issuing a free amended license while on duty with the Department of Motor Vehicles. Indeed, there can be few acts which reveal a guilty mind with such stark clarity as a public official’s receipt of $100 in cash for performing a routine service which he is required by law to perform without charge. It cannot seriously be contended that the "evidence of successive similar representations [was] crucial in attempting to ascertain defendant’s intention” (People v Schwartzman, supra, at 248; see also, People v McKinney, supra, at 184-185; People v Molineux, supra, at 298).
*256 As the dissenting Justice at the Appellate Division observed (122 AD2d, at 674-675 [Murphy, P. J., dissenting]), there was really no issue at trial as to how or why or with what intent defendant took the money. Rather, it was whether, in light of defendant’s denials, he took the money at all. If the jury believed the evidence showing that defendant did take the money, the guilty inference was inescapable. The transaction could only have been a bribe for issuing the bogus license. Hence, the admission of Falto’s testimony about the 15 previous transactions served only to persuade the jury that defendant had a habit or propensity for taking bribes for falsifying certificates and, for that reason, must have done the same thing again. No balancing of probative value against prejudicial effect and no framing of curative instructions, no matter how meticulous the trial court in its efforts, could bring the evidence within either the mistake or intent Molineux exception. Falto’s testimony about the uncharged transactions should simply not have been permitted.
Ill
In my view, any other holding contravenes our prior decisions in closely analogous cases. In People v McKinney (supra), the People presented evidence of defendant’s prior assaults to prove his intent to inflict physical injury. We disapproved admission of the evidence on the grounds that "the alleged act of defendant [was] unequivocal”, his intention "may be inferred from the act itself’, and "[defendant did not contest the element of intention in the crime charged, but rather denied that” he ever assaulted the victim (24 NY2d, at 185, supra). Likewise, in People v Crandall (supra, at 118) we said it was improper to admit proof of prior drug transactions where "defendant flatly denie[d] ever having sold narcotics”. Relying solely on defendant’s denial, we held that there was no "claim of accident or mistake on defendant’s part to be negated * * * no issue concerning defendant’s intent, mistake or accident [to] furnish a pretext for the admission” of prior crime evidence (67 NY2d, at 119, supra).
The Federal cases are to the same effect. Federal Rule of Evidence 404 (b) (in 28 USC Appendix) is basically a restatement of our Molineux decision[6] and, therefore, the reasoning *257 of the Federal courts is clearly on point. In People v Benedetto (571 F2d 1246 [2d Cir]), the Government introduced evidence of prior acts of bribe receiving (receipt of money in connection with official duties [21 USC § 622]) contending it was relevant to show defendant’s knowledge and intent. Rejecting that contention the court explained that "[defendant did not claim that he took the money * * * innocently or mistakenly. He claimed that he did not take the money at all. Knowledge and intent, while technically at issue, were not really in dispute” (id., at 1249). Similarly, in United States v O’Connor (580 F2d 38 [2d Cir]), a case involving identical bribe receiving charges, the court held prior crimes proof inadmissible on intent or mistake because "defense counsel [had] protested] that there was no real issue of intent” (id., at 41). The rule common to these cases is consistent with our prior decisions and is fully applicable to the present case. Moreover, no decisions, State or Federal, have been cited by either the majority or the People, where the Molineux mistake or intent exception was held applicable in a bribe receiving case such as this one.* ***[7]
On the other hand, in a closely analogous case before our court exactly 100 years ago, People v Sharp (107 NY 427 [1887], supra), we unanimously reversed the defendant’s conviction for attempted bribe giving on the ground that the admission of proof of a prior, similar bribe, admitted on the issue of criminal intent, was barred by the general rule against such evidence, deemed "elementary” even then (id., at 458). In that case as here, the People offered the evidence as probative of "a substantial element of [the] crime” — i.e., "to show the intent with which the act charged was done” and, specifically, defendant’s "corrupt proposal” to a public official (id., at 436, 460). This court adamantly rejected the contention that the evidence was admissible to dispel the possibility that the defendant’s giving of bribe money was innocent. We *258 explained that, under the facts of that case, just as in this one, "the very thing in dispute” was whether the bribe money was passed at all (id., at 460). Whether defendant’s actions on another occasion revealed a "guilty purpose” was irrelevant. The evidence of the prior bribe only diverted "the minds of the jurors from the real point on which their verdict [was] sought” — whether the transaction alleged ever really occurred (id., at 461).
The majority’s reliance on People v Marrin (205 NY 275) is entirely misplaced. That case differs from this one in critical respects. Indeed, that case presents a most helpful contrast by illustrating well the type of act which, because it is equivocal, does fall within a Molineux exception. In Marrin defendant was charged with willfully certifying falsely, as a Commissioner of Deeds, that a James Cahill had signed and acknowledged a mortgage. As contrasted with the case at bar, there was no question that defendant had performed the acts alleged. The only question — as in the case of the counterfeit bill or the check with the forged signature — was whether defendant had the requisite knowledge of the falsity of the certification. In explaining why proof of prior crimes was legally relevant and, therefore, not barred by the general rule, we stated: "The suggestion that evidence could not be received to show that the same man picked the pocket of the same person on several successive occasions near together, does not apply to this case, because the pickpocket knows when he steals. There can be no mistake about it, whereas here there may have been a mistake. James Cahill may not have been a myth. Some one may have assumed to be James Cahill and may have convinced the defendant that he bore that name and was in fact the mortgagor, so that while the certificate was false the defendant may not have known it was false. The People did not know how much evidence might be presented by him tending to show that he was mistaken and the way was open to the prosecution to reduce the possibility of mistake to a minimum by proving eight similar and connected transactions” (205 NY, at 281, supra [emphasis added]).
The bribe receiver, like the pickpocket referred to in the Marrin opinion, "knows when” he has taken money. His action admits of no mistake and, in the present case, defendant disavowed such a claim.
Moreover, the rule applied in Marrin — that prior crimes *259 evidence which is admissible on some legally relevant issue may not be excluded solely because the People may establish a prima facie case without it — has no application here. The prior crimes evidence should have been excluded in this case not because it was unnecessary to establish a prima facie case, but because it was never admissible at all as coming within one of the Molineux exceptions. To hold that People v Marrin (supra) makes admissible proof which the basic Molineux rule makes legally inadmissible would vitiate the basic rule and frustrate the underlying purpose of the Molineux rule — excluding prior crimes proof for reasons of policy because of its inherently prejudicial nature unless the proof comes within one of the specified exceptions (see, People v Zackowitz, supra, at 197-198; People v Molineux, supra, at 291-294; Richardson, Evidence § 170 [Prince 10th ed]).
IV
Finally, questions of mistake or lack of intent which might render the uncharged crimes evidence admissible cannot now be injected into the case by artificially treating the single transaction as though it were two isolated events: an issuance of a false certificate and a separate receipt of a bribe. The alleged transaction was never treated as such at the trial and ought not to be so treated now for the purpose of uncovering issues of intent and knowledge not otherwise in the case. This case was presented to the jury, by both the prosecutor and the court, as a unified transaction involving the alleged acceptance of $100 in exchange for the issuance of a false driver’s license. While it is possible that proof of prior crimes could be offered and admitted on some or all of the individual counts in certain multicounts trials, that approach can have no application here. The prior crimes evidence was offered and received as bearing on a single transaction embracing both crimes, and no indication was given by the court in its various instructions to the jury that the prior crimes evidence should be considered with respect to only one charge, or to both charges viewed separately. Rather, the court consistently linked the bribery and false certificate charges and referred to a single state of mind. Indeed, the jury was specifically and repeatedly advised that the evidence should be used to determine defendant’s state of mind with respect to "the transaction”, "the *260 act”, "the only act”, "this crime”, "it must be proved” (emphasis added).[8]
The People’s case was that defendant accepted a bribe in return for his issuing a false certificate. The proof was of one transaction. The critical issue was whether defendant accepted the $100 payment. Once established, that fact was every bit as inculpatory in proving the requisite criminal intent on the false certificate charge as on the bribe receiving. The mens rea evinced by mere acceptance of the money pervaded the entire transaction, and neither the People nor the trial court attempted to parse it between the two crimes or assign it to one but not the other. It is inconceivable, therefore, that the jury could have concluded that the defendant had the requisite intent on one half of the transaction, but not the other — i.e., that defendant accepted the illegal payment but not for issuing a certificate he knew to be false. Thus, evidence of the 15 virtually identical, prior transactions was equally damaging on the false certificate charge and the bribe receiving. It foreclosed any real possibility that defendant’s guilt or inno *261 cence on either charge could be fairly judged by the jury on the relevant evidence.
Accordingly, I would reverse the order of the Appellate Division, vacate defendant’s conviction and order a new trial.

People v Hernandez

I disagree with the majority to the extent that they hold that the prior crimes evidence was admissible on the criminal sale charge. The evidence was clearly admissible on the charge of criminal possession with intent to sell because mere possession of a controlled substance, regardless of the quantity, is equivocal on the question of intention to sell. Moreover, defendant specifically denied that he ever had such intention, and, therefore, placed the question of intention directly into issue. For both reasons, the prior crimes evidence fell within the Molineux intent exception on the possession charge. The situation is quite the opposite, however, on the sales charge.
In the ordinary case, the act of exchanging drugs for money cannot be said to be equivocal; the act itself reveals the seller’s guilty intent. Therefore, where, as here, the defendant has raised no claim such as entrapment or agency which would put his intent into issue, the proof of prior sales is not admissible under the intent exception. (See, People v Crandall, supra, at 118.) Nor was such proof admissible under any other cognizable theory. The majority’s attempt to articulate a justification merely amounts to permitting the People to rebut defendant’s self-characterization as a nonseller of drugs with proof of uncharged incidents in which he sold in the past to show that he must have sold again. This proof added nothing to the evidence that he sold drugs as charged, but only that he had a criminal propensity for doing so. This is precisely the proof intended to be precluded by the Molineux rule, and it is not permitted by any other rule governing the use of character evidence relied on by either the People or the majority (cf, CPL 60.40 [2] ["any previous conviction”]; Richardson, Evidence § 152 [Prince 10th ed] [reputation]).
Accordingly, I would modify the order of the Appellate Division by reinstating only defendant’s conviction for criminal possession in the third degree.
In People v Alvino: Order affirmed.
Chief Judge Wachtler and Judges Alexander and Bellacosa concur with Judge Simons; Judge Hancock, Jr., dissents *262 and votes to reverse in a separate opinion in which Judges Kaye and Titone concur.
In People v Hernandez: Order reversed, judgment of Supreme Court, New York County, reinstated, and case remitted to the Appellate Division, First Department, for review of the facts.
Chief Judge Wachtler and Judges Kaye, Alexander and Bellacosa concur with Judge Simons; Judge Hancock, Jr., dissents in part and votes to modify in a separate opinion in which Judge Titone concurs.

. The pertinent portions of the transcript of the conversation follow:
"falto: Hello, Charlie. (Pause)
* ** *
"falto: Charlie, can I get this one done here? (pause)
* * *
"falto: Here’s a hundred, Charlie; thank you very much. Bye.
"alvino: Have a nice day.”

. The transcript of a second conversation, held later in the day on September 10, contains the following:
"falto: Charlie, listen * * *
"alvino: Yeah.
"falto: Don’t ever tell Miguel [Falto’s 'partner’] you did anything for me or that I * * *
"alvino: Okay.
"falto: * * * gave you the money, right?
"alvino: Okay.
"falto: Thank you.”

. Defendant testified, among other things, that he had not taken a bribe from Falto or anyone else while working at the Department of Motor Vehicles, that he had not heard Falto’s statement "Here’s a hundred, Charlie”, and that if he had heard it his reaction would have been: "What hundred dollars?”. Defendant also testified that he did not know what Falto was talking about when Falto said: "Don’t ever tell Miguel [Falto’s 'partner’] * * * that I * * * gave you money, right?” In summation, defense counsel argued that Falto’s stories about having bribed defendant were complete fabrications. He stressed that Falto had a motive to lie to avoid going to jail by implicating as many Department of Motor Vehicles employees as he could.

. The majority does not, and cannot, contend that the prior crimes evidence was admissible by reason of defendant’s claim that he was "framed” — i.e., that Falto’s accusations were fabricated to enhance his chances for leniency. We have only recently rejected just such contention in People v Crandall (67 NY2d 111). We made clear that where a defendant denies the criminal transaction, the fact that he embellishes his denial with an argument that he was "framed” or "set up” does not make proof of prior crimes admissible under the "mistake” or "intent” exceptions. The claim of a "frame” or "set up” is not that the defendant’s acts were somehow excusable. Rather, it is that the defendant never did the acts at all and that the evidence was concocted as a part of a scheme to convict him (see, id., at 119). Hence, defendant’s claim in the present case that he was framed merely underscored the critical issue — whether he received the bribe money. It did not raise questions of intent or mistake, or in any way render defendant’s alleged actions equivocal.

. Likewise, as in People v Hernandez (decided herewith), evidence that a defendant possessed drugs, without more, does not show whether his possession was with any plans to sell. Possession itself, no matter how large the quantity, is ambiguous on that question and, for that reason alone, proof of the defendant’s prior sales was admissible on the possession charge to show what he intended (see, majority opn, at 245). Contrariwise, there is nothing equivocal about actually selling drugs and, hence, the prior crimes evidence should not have been admitted under the intent exception on the sales charge.

. Federal Rule of Evidence 404 (b) (in 28 USC Appendix) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the *257 character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”

. In what appears to be the only bribe receiving case in which this court has addressed the Molineux issue (see, People v Fiore, 34 NY2d 81), we held it error to admit evidence that the school board president, charged with accepting a bribe from a contractor, had previously received kickbacks from the project’s architect. We found the evidence inadmissible to prove the existence of a corrupt agreement under the "common plan or scheme” exception. Significantly, in Fiore, as here, the defendant flatly denied ever receiving any payments.

. Indeed, the court repeatedly linked the bribery and false certificate charges and referred to a single state of mind in its various instructions to the jury on the prior crimes evidence throughout the trial. In the preliminary instructions the Judge stated: "[S]uch evidence will be received only for the purpose of giving the jury an opportunity to discern the defendant’s state of mind with respect to the transaction on September 10 and the mere fact that a person may or may not have committed some other act on another occasion is no proof whatever that he committed the act he’s accused of and the only act he’s accused of in this indictment. More will be said about this later” (emphasis added).
Just prior to the introduction of the evidence he reminded the jury: "I want you to understand his state of mind in receiving the money, whether it was an innocent or mistaken receipt or whether a corrupt receipt as part of the corrupt agreement goes to what the defendant’s state of mind was at the time the crimes alleged in the indictment are purported to have occurred” (emphasis added).
Just after the evidence was presented he reminded them again: "A jury may not find a person guilty of this crime because they believe he may have committed other crimes. It’s this crime, September 10th, 1982, which must be proved beyond a reasonable doubt and it must be proved upon its own facts that something happened on September 10th, 1982, which the law defines as a crime” (emphasis added).
In the final charge to the jury, the Judge said, among other things: "If such events [the uncharged briberies] have been proved beyond a reasonable doubt, then you may consider whether or not they demonstrate that the defendant’s intention [or] state of mind, what they were on the day he was purported to have accepted the bribe and issued the false certificate” (emphasis added).